Charla Gates CANNON, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 90–9017.

United States Court of Appeals, Tenth Circuit.

Nov. 15, 1991.

Rehearing Denied Jan. 13, 1992.

**346**

Towner Leeper of Leeper & Leeper, El Paso, Tex. (Arthur Bosworth, Denver, Colo. with him on the brief), for petitioner-appellant.

Sally J. Schornstheimer of the U.S. Dept. of Justice, Tax Div., Washington, D.C. (Gary R. Allen, Richard Farber, and Shirley D. Peterson with her on the brief), for respondent-appellee.

Before MOORE and EBEL, Circuit Judges, and ANDERSON, District Judge *.

EBEL, Circuit Judge.

This case concerns a taxpayer who became involved in an unprofitable mining venture and deducted her distributive share of certain partnership losses on her income tax returns. The Commissioner of Internal Revenue disallowed these deductions, and the Tax Court upheld the Commissioner's determinations. The taxpayer appeals, raising two issues. First, did the Tax Court correctly resolve the case on a theory not considered by either party, namely, section 183 losses? Second, did the Tax Court correctly conclude that the limited partnership did not incur the expenses at issue with the requisite profit motive? We conclude that the Tax Court's reliance on section 183 was proper and that the court's

* The Honorable Aldon J. Anderson, District Judge, United States District Court for the District of Utah, sitting by designation.

findings regarding partnership motives were not clearly erroneous. Accordingly, we affirm.

## I. BACKGROUND

The facts in this case are fully set forth in the Tax Court's opinion. *See Cannon v. Commissioner*, 59 T.C.M. (CCH) 164 (1990). For purposes of this appeal, they may be summarized as follows:

This case involves a taxpayer's treatment of losses incurred in connection with a Mexican gold and silver mining venture. In 1973, the taxpayer, Charla Cannon, joined a limited partnership ("Vemco") that was formed "to engage in the business of land development, exploration, mining and ore processing both in the United States and foreign countries." *Id.* at 165 (citation omitted). The taxpayer, who had a large annual income from trusts and her deceased husband's estate and employment benefits, provided Vemco with the funds necessary to conduct its business operations. In return, she was to receive a higher percentage than her partners of the profits or the proceeds in the event of a sale or disposition of the partnership assets. In addition, the annual expenses and losses of the partnership were allocated to the taxpayer insofar as her capital account permitted.

Vemco decided to invest in the Mexican venture at issue in this case in reliance upon the findings of an experienced miner who explored the sites and an engineer who analyzed and reported on the mining properties. Because Mexican law prohibits non-Mexican nationals or corporations from acquiring a majority interest in Mexican mining concessions, Compania Minera San Jose de Manzanillas, S.A. ("Manzanillas"), a Mexican corporation, held the mining concessions, and Vemco became a forty-nine percent shareholder in that corporation.[1] In 1978, however, Vemco discovered that the president of Manzanillas had been embezzling, and the mining concessions were transferred to Memco, a different Mexican corporation. Although the taxpayer,

through Vemco, expended over $800,000 for exploration and development of the mines, Memco never operated at a profit. Vemco did not report any income from mining for the years involved in this lawsuit, nor did it receive any dividends.

The taxpayer deducted her distributive share of the partnership losses claimed by Vemco on her federal income tax returns for 1976, 1977, 1978, and 1979. The Commissioner of Internal Revenue ("Commissioner") disallowed these deductions on the grounds that the taxpayer did not establish that these amounts constituted ordinary and necessary business expenses or were for an activity entered into for profit or for the production of income. Alternatively, the Commissioner asserted that these amounts were nondeductible capital contributions to the Mexican corporation that the parties formed to hold title to the mines.

The Tax Court agreed with the Commissioner's decision to disallow the deductions, but found the expenditures to be nondeductible under section 183 of the Internal Revenue Code. Because the Tax Court decided the case on the basis of a section that neither party raised explicitly, the taxpayer filed a motion for reconsideration, which was denied. The taxpayer appeals. This court has jurisdiction to review the Tax Court's decision pursuant to 26 U.S.C. § 7482(a).

We first discuss whether the Tax Court erred in resolving this case on the basis of section 183. We then discuss whether the expenses at issue were incurred with the requisite profit motive.

## II. DISCUSSION

### A. *The Propriety of Resolving the Case Under Section 183*

■ In *Commissioner v. Transport Manufacturing & Equipment Co.*, 478 F.2d 731, 735 (8th Cir.1973), the Eighth Circuit stated that the Commissioner should notify the taxpayer of the particular Code section, regulation, or theory involved

---

1. The taxpayer claimed that Vemco was in a joint venture with this Mexican corporation, but

the Tax Court rejected this argument. 59 T.C.M. at 171.

in a case to avoid prejudice to the taxpayer. The court reasoned that "[t]he taxpayer works at an extreme disadvantage in trying to invalidate deficiency assessments if he does not specifically know why the Commissioner is challenging the taxpayer." *Id.* (footnote omitted). The court recognized, however, that prejudice does not always result: "Of course, if a certain Code section, regulation or theory has not been specifically raised in the notice of deficiency, in the pleadings, or at trial and if there is an absence of surprise on the taxpayer's part, the taxpayer has no reason to complain." *Id.* n. 8 (citation omitted).

Here, the taxpayer contends that the Tax Court erroneously decided this case on the basis of a theory and Code provision (lack of profit motive and section 183) that neither party considered or raised, thereby surprising and prejudicing the taxpayer. According to the taxpayer, only three Code sections were at issue: sections 162, 212, and 616.[2] We disagree. Section 183 is interrelated to sections 162 and 212, profit motive being the common underlying theme. Indeed, as discussed *infra*, these provisions even reference each other. Accordingly, we find that the taxpayer in this case was adequately put on notice, was not prejudiced, and should not have been surprised.

The taxpayer asserts that neither party ever considered the Tax Court's position that a profit motive was not present. Yet, the evidence reveals that profit motive was indeed a critical issue in this case and that the Commissioner was unwilling to concede the presence of a profit motive. For example, the statutory notices of deficiency that the Commissioner issued to the taxpayer expressly stated that she had not established that she entered into the transaction in pursuit of economic profit and that this lack of profit motive was one of the bases for the disallowance of the claimed partnership deductions. Record, vol. I, doc. 3, Deficiency Notice, Explanation of Adjustments, Exhibit A. In addition, the Commissioner's opening statement explicitly noted that the taxpayer had to prove a profit motive. Record, vol. II, Transcript, Nov. 19, 1986, at 26. Indeed, the taxpayer attempted to do this, *see infra* Part II.B, and acknowledged that "[t]o obtain a deduction under Section 162 for a trade or business expense or under Section 212 for an expenditure for the production of income requires a profit motive." Brief for Appellant at 37.[3]

In determining whether the mining activity met the requirements of sections 162 or 212, the court naturally applied section 183. Section 183 is often used in analyzing "for profit" issues, both in the context of hobby losses and in the context of trade or business expenses. Numerous courts have used the regulations accompanying section 183 to determine profit motive under other sections. *See, e.g., Independent Elec. Supply, Inc. v. Commissioner,* 781 F.2d 724, 726–27 (9th Cir.1986) ("the courts have relied on the section 183 factors in conducting the profit motive analysis under section 162"); *Brannen v. Commissioner,* 722 F.2d 695, 704–06 (11th Cir.1984) (applying factors listed in section 183 regulations to determine whether taxpayer's activities were engaged in for profit under section 162); *Faulconer v. Commissioner,* 748 F.2d 890, 893 (4th Cir.1984) (referring to section 183 to determine whether a taxpayer was entitled to deductions under sections 162 or 212, noting that the profit motive is the same under all three statutory sections, and concluding that "[t]he

---

**2.** Section 162 allows for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." I.R.C. § 162(a).

Section 212 allows for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year—(1) for the production or collection of income; [or] (2) for the management, conservation, or maintenance of property held for the production of income...." I.R.C. § 212.

Section 616 allows for the deduction of development expenditures for mines and other natural deposits "if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed." I.R.C. § 616(a).

**3.** *Thomas v. Commissioner,* 792 F.2d 1256, 1259 (4th Cir.1986), establishes that section 616 also requires a profit motive.

regulations under section 183, therefore, explicate the profit-motive requirements of sections 162 and 212, and courts have properly relied on the section 183 factors in making the profit-motive analysis under sections 162 and 212"); *Carter v. Commissioner,* 645 F.2d 784, 786 (9th Cir.1981) ("[section] 183(c) must be read in conjunction with [section] 162") (footnote omitted); *Dreicer v. Commissioner,* 665 F.2d 1292, 1294 (D.C.Cir.1981) ("a taxpayer claiming a deduction under Sections 162 or 212 for an expense, or under Section 165 for a loss, must be prepared to demonstrate an associated profit motive in order to avoid the ban of Section 183") (footnote omitted). Thus, the Tax Court's application of section 183 was routine and predictable, not extraordinary.

In fact, the regulations accompanying section 212, on which the taxpayer relied, expressly refer to section 183. They specify that the inquiry as to profit motive under section 212 is determined by reference to section 183 and the accompanying regulations: "For provisions relating to activities not engaged in for profit applicable to taxable years beginning after December 31, 1969, see section 183 and the regulations thereunder." Treas.Reg. § 1.212–1(c). Section 183 similarly references sections 162 and 212 when it defines "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable ... under section 162 or under paragraph (1) or (2) of section 212." I.R.C. § 183(c).

In summary, the Tax Court did not err in resolving this case on the basis of Internal Revenue Code section 183. Given the importance of profit motive, the Tax Court's reliance on section 183 was both predictable and nonprejudicial.

### B. *Applying Section 183*

Having determined that it was proper to utilize section 183 in this case, we next address whether the Tax Court correctly applied the factors enumerated in the Treasury Regulations accompanying that section.

■ Whether Vemco and the taxpayer were in pursuit of economic profit is a question of fact. The applicable standard of review is a stringent one: a finding of fact should not be disturbed unless it is clearly erroneous. Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ The taxpayer makes a persuasive argument that might well have convinced us if we were examining the record de novo. However, as the Supreme Court stated in *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985):

> This [clearly erroneous] standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Id.* at 573–74, 105 S.Ct. at 1511. Given the Tax Court's "plausible" account of the evidence, we cannot say as a reviewing court that its decision was clearly erroneous. After a thorough examination of the facts and circumstances of this case, we therefore affirm the Tax Court's determination that neither the taxpayer nor Vemco possessed the requisite profit motive.

■ The Tax Court appropriately delineated the proper procedures to follow in determining whether an activity is engaged in for profit. Where a partnership is involved, as it is in this case, the dominant economic motive of the partnership, not that of the individual investors, is determinative. *Polakof v. Commissioner,* 820 F.2d 321, 323 (9th Cir.1987), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761

(1988); *Tallal v. Commissioner,* 778 F.2d 275, 276 (5th Cir.1985); *Brannen,* 722 F.2d at 703-04.

■ The taxpayer bears the burden of proving the required profit objective. Tax Ct.R. 142(a); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). The test is whether profit was the dominant or primary objective of the venture. *See, e.g., Polakof,* 820 F.2d at 323-24 ("dominant economic motive," "primary purpose"); *Thomas v. Commissioner,* 792 F.2d 1256, 1259 (4th Cir.1986) ("primary objective"); *Snyder v. United States,* 674 F.2d 1359, 1364 (10th Cir.1982) ("primarily motivated"); *Eastman v. United States,* 635 F.2d 833, 837 (Ct.Cl.1980) ("primary purpose," "overriding profit motivation").

The regulations under section 183 set forth nine nonexclusive factors to be considered in determining whether a taxpayer's activities are engaged in with the objective of realizing a profit: (1) the extent to which the taxpayer carries on the activity in a businesslike manner; (2) the taxpayer's expertise or his reliance on the advice of experts; (3) the time and effort the taxpayer expends in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in similar activities; (6) the taxpayer's history of income or loss in the activity; (7) the amount of occasional profits, if any; (8) the taxpayer's financial status; and (9) the elements of personal pleasure or recreation. Treas.Reg. § 1.183-2(b).

■ The Treasury Regulations provide insight regarding how to apply these objective factors to determine subjective intent. The ultimate inquiry entails examining the facts and circumstances of each case:

No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa.

*Id.*

The Tax Court applied the relevant factors and concluded that the partnership was not motivated by profit on the following bases: (1) The $50,172.32 projected net monthly profit that lured the taxpayer and Vemco into this mining activity, predicted in the expert's report, was unattainable as it was erroneously based upon projected ore grades that were contrary to actual test results. (2) Vemco failed to increase the milling capacity of the mines as recommended in the same expert report.[4] (3) Vemco continued to fund projects relating to the mines even though they had an unbroken record of substantial losses ($2,205,045.10), they were unlikely to recoup those losses, and the Mexican corporations never paid a dividend to Vemco. (4) Despite these losses, Vemco took few steps to increase production. (5) The taxpayer received substantial income from other sources, which enabled her to provide large amounts of capital.[5] (6) Vemco maintained incomplete books and records.

In support of the taxpayer's position, the Tax Court acknowledged that some of the limited partners contributed time and effort to the mining operations[6] and that one limited partner had operated profitable mines in the past[7]. We add several other

---

**4.** Treas.Reg. § 1.183-2(b)(2) provides: "Where a taxpayer ... procures ... expert advice, but does not carry on the activity in accordance with such practices, a lack of intent to derive profit may be indicated unless it appears that the taxpayer is attempting to develop new or superior techniques which may result in profits from the activity."

**5.** Although we agree with the Tax Court's assessment of the other Treasury Regulation factors, we find the factor focusing upon the financial status of the taxpayer to be a wash. *See* Treas. Reg. § 1.183-2(b)(8).

**6.** *See* Treas.Reg. § 1.183-2(b)(3).

**7.** *See* Treas.Reg. § 1.183-2(b)(5). The taxpayer's own previous businesses included a profitable aeronautical business, an unprofitable sheep-raising operation, a profitable woman's exercise and health spa, and a helicopter sales business for which success or lack of success

factors to this short list, namely the taxpayer's repeated statements regarding profit motive during the proceedings below, the taxpayer's reliance upon expert advice, and the lack of an alternative non-profit-making explanation for the venture.

 The taxpayer stated during the proceedings before the Tax Court that she was indeed motivated by a desire to profit:

Counsel: What was your motive in—why did you want to spend—make an investment down there? Do you enjoy mining?

Cannon: Well, I had heard a great deal about mining all my life, but also, over and above that, I obviously was down there to make money.

.　.　.　.　.

I have invested in several things throughout my lifetime and this one looked very good....

.　.　.　.　.

I had no intention to do anything except make money.

Record, vol. II, Transcript, Nov. 20, 1986, at 289–90. She also discussed the profitability of her former ventures and the anticipated profits of this venture. *Id.* at 285, 293, 296–300.[8]

Vemco's solicitation of expert advice further supports the taxpayer's contention that the mining activity was engaged in for profit. *See* Treas.Reg. § 1.183–2(b)(2). Carl Weaver, an experienced miner since 1939 in Arizona, Colorado, Utah, and Mexico and a limited partner in Vemco, explored the mines and prepared a report on their histories and capabilities. Henry Ehrlinger, a professor of mining and engineering at the University of Texas at El Paso, also analyzed and reported on the mines. Ehrlinger had considerable experience in Mexican mining and had operated a company similar to Vemco on his own. Ralph Wilcox, Jr., a graduate geology student at the University of Texas, analyzed ore samples taken from the mines. The taxpayer relied upon this expertise. Record, vol. 2, Transcript, Nov. 20, 1986, at 283–89.

Finally, the ninth factor, "Elements of personal pleasure or recreation," deserves more attention than it was given by the Tax Court. Treas.Reg. § 1.183–2(b)(9) clearly indicates that "a profit motivation may be indicated where an activity lacks any appeal other than profit." Here, the absence of any suggestion of an alternative motive in the record is a powerful factor in support of the taxpayer's position.[9]

Although it is unclear what besides profit might have prompted Vemco to expend substantial amounts of money on this venture, we cannot declare the court's findings clearly erroneous. The Tax Court carefully applied the appropriate factors and provided a solid basis for its decision.

With respect to the experts' reports, the Tax Court emphasized that Ehrlinger's monthly profit projection of $50,172.32 was erroneously based upon inconsistent data regarding the ore grades that could be realized per ton of ore mined. 59 T.C.M. at 169. The actual assay work on the ore veins showed a decidedly poorer ore body in general than was assumed in the expert's report. *Id.* In addition, Vemco did

---

was not established. Record, vol. II, Transcript, Nov. 20, 1986, at 297–300.

8. We note, however, that a taxpayer's statement of intent is given less weight than objective factors in determining such intent. Treas.Reg. § 1.183–2(a); *Engdahl v. Commissioner,* 72 T.C. 659, 666 (1979); *see also Brodrick v. Derby,* 236 F.2d 35, 38 (10th Cir.1956) (circumstances may indicate motive contrary to that stated).

9. Courts that fail to discern a profit motive often specify an alternative explanation for a party's actions. *See, e.g., Polakof,* 820 F.2d at 324 (limited partnership that bought film properties was motivated by a desire to create tax shelters rather than to profit); *Thomas,* 792 F.2d at 1258 (primary objective of coal mining program was to secure tax benefits rather than to earn an economic profit); *Estate of Power v. Commissioner,* 736 F.2d 826, 831 (1st Cir.1984) (taxpayer's horse-breeding activity was engaged in for personal satisfaction, not profit); *Eastman,* 635 F.2d at 841 (family engaged in horse-breeding in order to utilize the losses from that operation to offset other income). *But see Antonides v. Commissioner,* 893 F.2d 656, 660 (4th Cir.1990) (suggesting that the court does not need to pinpoint the likely motivation, as long as it determines on the basis of the Treasury Regulation factors that the activity was not engaged in for profit).

not implement the critical aspects of the experts' advice, upon which any prospect of profits depended. *Id.* at 170. *See* Treas. Reg. § 1.183–2(b)(2) (where a taxpayer procures but does not follow expert advice, "a lack of intent to derive profit may be indicated"). Specifically, Weaver and Ehrlinger recommended that Vemco install a higher capacity mill in order to enhance the efficiency and profitability of the mines; indeed, their profit projections depended upon this mill. Vemco never installed it, however, thereby precluding any chances of transforming this mining venture into a profitable operation. 59 T.C.M. at 170.

The Tax Court also emphasized that Vemco did not receive any profits from this mining venture for an entire eleven-year-period. In fact, the mines had an unbroken record of substantial losses totalling $2,205,045.10. *Id.* at 169. A record of such persistent and substantial losses is persuasive evidence that Vemco did not possess the requisite profit motive. *See* Treas.Reg. § 1.183–2(b)(6) ("[W]here losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, ... may be indicative that the activity is not being engaged in for profit."). Furthermore, Vemco took few steps to increase production in the face of these overwhelming losses, and the record reveals that Vemco was unlikely to recoup the losses.

Finally, Vemco maintained incomplete books and records, as it was unable to verify many claimed payments by tracing them back to a source document. *See* Treas.Reg. § 1.183–(2)(b)(1).

In summary, the record reveals that several of the factors set forth in Treas.Reg. § 1.183–2(b) support the taxpayer's position, whereas others support the government's position. Taking all facts and circumstances into account, we cannot say that the Tax Court's application of the Treasury Regulations accompanying section 183 was clearly erroneous. Accordingly, we AFFIRM the findings of the Tax Court.

In light of this ruling, we need not address the alternative basis that the Tax Court provided for its decision, namely that the deductions that the petitioner claimed through Vemco "are disallowed by virtue of their being the expenses of another taxpayer." 59 T.C.M. at 170.

AFFIRMED.