T.C. Memo. 1995-473


UNITED STATES TAX COURT


GENERAL K. HILLIARD AND IDA M. HILLIARD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4929-93.                    Filed October 3, 1995.


Jeffrey A. Berchenko, for petitioners.

James P. Thurston and Bryce A. Kranzthor, for respondent.


MEMORANDUM OPINION

GERBER, Judge:  Respondent determined deficiencies in

petitioners' Federal income tax and additions to tax for the

taxable years 1986, 1987, and 1988 as follows:

|  |  | Additions to Tax | | | |
|  |  | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(a)(1) | 6653(a)(1)(A) | 6653(a)(1)(B) | 6661 |
| 1986 | $38,390 | -- | $1,920 | [1] | $9,598 |
| 1987 | 37,345 | -- | 1,867 | [1] | 9,336 |
| 1988 | 8,097 | $405 | -- | -- | 2,024 |

[1] 50 percent of the interest with respect to the portions of
the underpayments which are attributable to negligence.

After concessions[1] by the parties, the issues remaining for our consideration are: (1) Whether petitioners are entitled to deduct losses from charter activities of two boats, which were passed through to petitioners from their wholly owned S corporation, "Island Ventures, Inc."; (2) whether petitioners are entitled to deduct losses attributable to the rental of residential property located in the Lake Tahoe area (the Tahoe property); (3) whether petitioners are entitled to deduct automobile expenses attributable to Mrs. Hilliard's self-employment activity in an amount greater than that allowed by respondent and, if not, whether petitioners are liable for additional self-employment tax; (4) whether petitioners are entitled to deduct mortgage interest in an amount greater than that allowed by respondent; (5) whether petitioners are liable for additions to tax for negligence; and (6) whether petitioners are liable for additions to tax for substantial understatement of their tax liability.

The question of whether petitioners are entitled to deduct

---

[1] Petitioners conceded that: (1) Respondent's $11,992 investment tax credit recapture adjustment for 1987 is correct; (2) respondent's adjustments regarding the Tahoe property in items d, e, and i in the Adjustment to Income (Supplemental Schedule) in the notice of deficiency are correct if the Court should find that the Tahoe rental activity was not for profit under sec. 183, I.R.C., and if the activity was for profit, then the loss limitations of sec. 280A(e), I.R.C., would apply; (3) they are not entitled to an interest deduction for $7,153 of points claimed for 1987; (4) $2,625 of interest claimed for 1987 with respect to the Tahoe property is not allowable; (5) $1,385 of the investment interest claimed for 1988 is not allowable; and (6) $460 of personal interest claimed for 1987 is not allowable.

the losses from boat chartering and residential rental activities concerns whether those endeavors were "not engaged in for profit" within the meaning of section 183.[2]  For simplicity and clarity, we set forth the background facts and legal principles applying generally to the boating and residential rental activities. Thereafter, combined findings of fact and legal discussion are presented in separate sections for each issue.

I. Background[3]

Petitioners, at all relevant times, were married, filed joint income tax returns, and resided in Orinda, California. Petitioners are medical doctors:  Mrs. Hilliard is a psychiatrist and Mr. Hilliard is a cardiologist.  They practice medicine on a full-time basis.

Mr. Hilliard has been involved in sailing as a hobby since 1966, and he purchased a small sailboat in 1970 and a fixed-keel boat in 1975 or 1976 for his personal use.

On their 1986, 1987, and 1988 joint tax returns, petitioners jointly reported wages and net income from the practice of medicine in amounts ranging from approximately $166,000 to $230,000 per year.  Against the income reported, petitioners claimed losses attributable to boating and residential rental activities.  Petitioners reported boat chartering income and

_____

[2] Section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to this Court's Rules of Practice and Procedure.

[3] The parties' stipulations of facts and exhibits are incorporated by this reference.

expenses for the years 1984 through 1988 as follows:

|  | 1984 | 1985 | 1986 | 1987 | 1988 |
|---|---|---|---|---|---|
| Income | none | $1,250 | $2,900 | none | none |
| Expenses | | | | | |
| Repairs | | 8,534 | 2,380 | $4,029 | |
| Insurance, taxes, fees | | 20,810 | 15,387 | 5,500 | $939 |
| Interest | | 17,333 | 20,366 | 10,520 | |
| Depreciation | $28,482 | 47,851 | 47,260 | 39,875 | |
| Claimed Loss | 28,482 | 93,278 | 82,493 | 59,924 | 939 |

Petitioners also claimed losses from rental activity in the amounts of $19,068, $18,794, $19,649, $19,347, and $16,107 for the years 1984, 1985, 1986, 1987, and 1988, respectively.

## II. General Legal Principles

As a general rule, the Commissioner's determinations are afforded a presumption of correctness, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to claimed deductions. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra. This includes the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

In determining whether petitioners are entitled to deduct losses from their boat chartering and residential rental activities, we must decide whether these activities were engaged in for profit within the meaning of section 183. Section 183(a)

provides generally that, if an activity is not engaged in for profit, no deduction attributable to such activity shall be allowed except as provided in that section. Section 183(b)(1) provides that deductions that are allowable without regard to whether the activity is engaged in for profit (e.g., real property taxes) shall be allowed, and section 183(b)(2) provides that deductions that would be allowable only if the activity were engaged in for profit shall be allowed, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1).

Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212".[4] For a deduction to be allowed under section 162 or section 212(1) or (2), petitioners must establish that they engaged in the activity with the actual and honest objective of making an economic profit, independent of tax savings. Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without

---

[4] Under sec. 162, deductions are allowable for the expenses of carrying on an activity that constitutes a trade or business if those expenses are ordinary and necessary to the conduct of the trade or business. Sec. 212 permits the deduction of expenses incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

opinion 702 F.2d 1205 (D.C. Cir. 1983). Their expectation of profit need not have been reasonable; however, they must have entered into the activity, or continued it, with the objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs.

The burden is on petitioners to show error in respondent's determination that the boat chartering and/or the residential rental activities were not engaged in for profit. Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Boyer v. Commissioner, 69 T.C. 521, 537 (1977); Benz v. Commissioner, 63 T.C. 375 (1974). Whether the requisite profit objective exists is determined by looking at all the surrounding facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of his intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Beck v. Commissioner, 85 T.C. 557, 570 (1985); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in the evaluation of a taxpayer's profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying

on other similar or dissimilar activities; (6) the taxpayer's history of income or losses from the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  This list is nonexclusive, and no single factor or even a majority of factors necessarily controls.  Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.

III.  Boat Charter Activities

The boat charter activities were operated by Island Ventures, Inc., petitioners' S corporation.  The claimed losses were passed through the S corporation to petitioners and claimed on their joint Federal income tax returns.[5]  Losses attributable to the sailboat charter activity were claimed only for the 1986 year because the sailboat was not offered for charter in later years, even though it continued to be owned by petitioners. Losses attributable to the fishing boat charter activity were claimed for 1986 and 1987.  For 1988, petitioners claimed legal fees incurred in connection with the fishing boat.

A.  Sailboat Activity

In 1979, Mr. Hilliard purchased a Columbia 32-foot sailboat (sailboat) for approximately $65,000. The sailboat was placed with Captain George's charter service in the San Francisco Bay

---

[5] If we hold that either of the boat charter activities was engaged in for profit, then we must decide whether the losses from that activity are subject to the S corporation loss limitation rules under sec. 1366(d)(1).

area.  The sailboat was infrequently chartered, and it was not maintained.  Berth fees paid directly to Captain George's were not forwarded to the harbor master.  After 1 year, Mr. Hilliard moved the boat to a marina in Richmond, California, and, thereafter, petitioners attempted to charter the sailboat themselves.  Mr. Hilliard had no prior experience in sailboat chartering.  Petitioners posted notices on bulletin boards in the hospitals where they worked, placed a sign on the boat, and otherwise relied on word of mouth to advertise their sailboat for charter.  The sailboat, while located at the Richmond marina, was seldom chartered.  Petitioners received little income, and it was substantially less than their claimed expenses.  Petitioners ceased sailboat charter activity during 1987, but they retained the sailboat for personal use.  During the time petitioners were attempting to charter the sailboat, they personally used the boat about once a month during the summer.  The boat was not used during the winter.

(1) <u>Manner in which the taxpayer carries on the activity</u>. Attempts to publicize or advertise the chartering activities were not significant.  Petitioners did not prepare a written business plan prior to the sailboat purchase.  No separate books and records or separate bank accounts were maintained regarding the sailboat.

(2) <u>The expertise of the taxpayer or his advisers</u>.  Although Mr. Hilliard was an experienced sailor and sailed the boat during the summer, he had no experience with chartering.  Petitioners

did not seek out the assistance of their accountant or any other assistance in connection with their sailboat charter activity.

(3) _Time and effort expended by the taxpayer in carrying on the activity_.  Petitioners, both of whom were full-time medical doctors, spent little time with the chartering business.  The extent of their efforts included merely placing the sailboat in a marina and attempting to solicit charter activity by placing notices on bulletin boards at the hospitals where they worked.

(4) _Expectation that assets used in the activity may appreciate in value_.  Mr. Hilliard expected to benefit from gaining equity in the boat by making monthly mortgage payments derived from boat charter revenues.  Mr. Hilliard was aware that his sailboat was not likely to appreciate in value.  Although, for several years, the sailboat generated relatively large amounts of expenses and little or no income, petitioners did not make any meaningful changes to their approach, other than to move the boat to another marina.  Petitioners were content to claim the deductions and have the boat available for their use during the summer boating season.

(5) _The success of the taxpayer in carrying on other similar or dissimilar activities_.  Petitioners' attempt to charter the sailboat was their first attempt at chartering.  They offered no other evidence of their success in other types of chartering businesses prior to that date.

(6) _The taxpayer's history of income and loss with respect to the activity, and (7) the amount of occasional profits, if_

any, that are earned.  A record of substantial losses over many
years and the unlikelihood of achieving a profitable operation
may be important factors bearing on the taxpayer's intention.
Cannon v. Commissioner, 949 F.2d 345, 352 (10th Cir. 1991), affg.
T.C. Memo. 1990-148; Golanty v. Commissioner, 72 T.C. at 426-427.
Petitioners' chartering activities generated substantial losses
over a period of about 8 years, which petitioners used to offset
taxable income from other sources.

(8) The financial status of the taxpayer.  During the period
petitioners owned and attempted to charter the sailboat, they
received substantial income from their full-time medical
practices.  Petitioners' income from the practice of medicine
provided the base from which chartering activities losses were
deducted, providing tax benefits.

(9) The presence of elements of personal pleasure or
recreation.  Mr. Hilliard has sailed as a hobby since 1966.
Petitioners used the sailboat personally about one weekend a
month during the summer.

Essentially, petitioners sought to deduct the cost of the
operation of their sailboat, which they had available for their
personal use.  Their approach was not businesslike, and little
effort was invested in their attempt to charter the boat.  We
note that the year after the fishing boat was purchased and
started the generation of substantial deductions (by way of
depreciation and credits), petitioners ceased any attempt to
charter the sailboat or to claim any operating expenses.

Accordingly, we hold that the attempt to charter the sailboat was an activity "not engaged in for profit" within the meaning of section 183. Hence, it is not necessary to discuss the section 1366(d)(1) loss requirements regarding S corporations.

B. Fishing Boat Activity

In 1985, Mr. Hilliard became aware of a boat investment opportunity through his accountant, Nathaniel Brazil. Mr. Brazil, who was married to Mr. Hilliard's cousin, was also a friend and has been petitioners' accountant since 1968. Pursuant to Mr. Brazil's proposal, petitioners were to purchase a boat and place it in a charter activity in Florida using Inter Island Charters, Inc.

Petitioners did not do any independent investigation and relied on Mr. Brazil for investigation of the fishing boat investment. There is no indication that Mr. Brazil traveled to Florida to investigate the fishing boat. On Mr. Brazil's advice, petitioners agreed to a $199,894 purchase price for a new 1985 Sport Strike Fisherman boat named "My Toy" (fishing boat) during March or April 1985; the boat was to be docked in Fort Lauderdale, Florida. Mr. Hilliard did not know whether Mr. Brazil had any experience concerning investments in boat chartering.

Early in March 1985, Mr. Hilliard executed a purchase order for a fishing boat that he had not seen prior to making the order. Mr. Brazil had arranged for petitioners to meet with the

sellers and with representatives of Inter Island Charters.  At the end of March 1985, petitioners traveled to Florida for a weekend and arranged for purchase of the fishing boat. Petitioners were not provided with a choice of boats from the seller's inventory.

Prior to purchasing the boat, Mr. Hilliard was furnished with a prospectus-type generic analysis of a boat investment prepared by Robert Jarkow (Jarkow), a certified public accountant.  The report summarized projected cash-flow and net after-tax benefits to be derived from the purchase and charter of a "luxury sailing vessel."  The analysis, based on various assumptions regarding tax bracket, investment amount, and rental revenues, contained the projections that there would be tax losses for the first 5 years, and that investment tax credits and depreciation would generate substantial tax benefits with nominal amounts of cash expenditure.  For example, Jarkow's analysis reflected that an $11,200 initial investment would produce a $51,000 tax loss in the first year.  A review of the financial and tax analysis in Jarkow's "prospectus" shows that tax benefits would exceed out-of-pocket expenditures irrespective of whether the boat was actually chartered.  Petitioners did not review in detail the profit projections for a "luxury sailing vessel" prepared by Jarkow.

After viewing the fishing boat, petitioners completed the purchase by signing several previously prepared documents, including documents establishing petitioners' wholly owned S

corporation, Island Ventures, Inc., a North Carolina corporation, as owner of the boat, the bill of sale, a note and security agreement, and other financial disclosure forms required by law. Mr. Hilliard's prior boat experience made him aware that boats generally do not appreciate in value.

The fishing boat was purchased by petitioners jointly with Island Charters Corp., set up by petitioners to be the corporate owner of the boat. Island Charters Corp. was utilized to avoid Florida sales taxes of $10,000 on the fishing boat purchase.

Two months after payment and prior to delivery of the fishing boat, petitioners discovered that Inter Island Charters ceased business and that payments were not being made to the bank on the promissory note. Mr. Hilliard traveled to Florida and arranged with Mr. and Mrs. Winters to handle the charter activities. Mrs. Winters had been an employee of Inter Island Charters. The arrangements were made with the Winterses at a time when Mr. Hilliard was aware that Inter Island Charters had gone out of business and Mr. Hilliard had been interviewed by the Federal Bureau of Investigation concerning Inter Island Charters and its employees. Mr. Hilliard did not ask the Winterses why Inter Island Charters failed.

The Winterses controlled the fishing boat and rented it just one time during the period 1985 through most of 1987. The Winterses allowed the fishing boat to fall into a state of disrepair. Around that time, Mr. Hilliard received a call from Mr. Quartiano, a Florida shark fisherman, who advised him that

petitioners' boat was not being properly serviced and that Mr. Quartiano would be willing to take over charter operations. During September 1987, petitioners ceased making payments to the bank on the promissory note. Prior to finalizing any arrangement with Mr. Quartiano, during November 1987, the financing bank brought a Complaint in Admiralty against petitioners and their North Carolina corporation in Federal court to foreclose on a "United States First Preferred Ship Mortgage and Marine Security Agreement", and the fishing boat was seized by U.S. marshals pursuant to a court order. The fishing boat was sold under a court order on June 24, 1988, for $50,000. Petitioners claimed depreciation and expenses connected with the fishing boat through 1987. For 1988, the $939 claimed represented legal fees in connection with the lawsuit and foreclosure of the fishing boat.

Other than one short ride, there was no personal use of the fishing boat by the petitioners. Petitioners believed that the revenues from chartering the fishing boat would be sufficient to cover the mortgage payments on the boat. Petitioners received monthly charter summaries revealing that the boat had been chartered very little.

(1) <u>Manner in which the taxpayer carries on the activity</u>. The fishing boat activity was operated through petitioners' S corporation, and petitioners relied on their accountant and independent charter contractors. Although several entities were interposed between the fishing boat and petitioners, ultimately as owners, it was, in effect, their charter business. In this

regard, petitioners showed little interest in the charter activity, the keeping of books for the activity, or the manner in which the Winterses controlled the boat or conducted the charter activity.

(2) Expertise of the taxpayer or his advisers. Mr. Hilliard, although an experienced sailor, had no experience with chartering a fishing boat. Petitioners had several years of experience attempting to charter the sailboat. These efforts resulted in repeated and relatively large losses. Despite these experiences, petitioners relied on their accountant, Mr. Brazil. It was not shown that Mr. Brazil had experience with fishing boat chartering. Petitioners did not seek the expertise of any third party, and, after the original charter company failed, petitioners allowed employees of the failed company to continue in their role as charterer. They allowed the Winterses to control the boat and arrange charters, even though there were suspicious circumstances surrounding their former employer. We find it curious that Mr. Hilliard, when he had made arrangements with the Winterses, did not inquire about the reason or the circumstances behind the failure of the original charter company.

(3) Time and effort expended by the taxpayer in carrying on the activity. Petitioners were engaged in the full-time practice of medicine. They spent little time with their fishing boat chartering business. They did not carefully read the analytical materials provided or investigate the circumstances of the investment in the fishing boat. Instead, petitioners relied

solely on their accountant, a friend and part of their extended family.

Following in that pattern, petitioners traveled to Florida to purchase the fishing boat and again when the charter company failed. Other than those two trips, petitioners were oblivious to the fishing boat activity. After 2 years without supervision of the Winterses, petitioners found out from a third party that their fishing boat was in poor condition and was not being properly managed. Shortly thereafter, petitioners discontinued mortgage payments, and the boat was seized.

(4) Expectation that assets used in the activity may appreciate in value. Mr. Hilliard was of the view that boats normally do not appreciate in value. The circumstances here reflect that petitioners focused primarily on the tax benefits (deductions) and the sheltering of their medical practice income. In this regard, there is some indication in the materials concerning the foreclosure of the maritime mortgage that petitioners may have overpaid for the fishing boat. In that regard, the purchase price was nearly $200,000, and the fishing boat was sold less than 3 years later, without much intervening use, for $50,000.

(5) The success of the taxpayer in carrying on other similar or dissimilar activities. Petitioners had several years of experience attempting to charter the sailboat. Those efforts resulted in repeated and relatively large losses. Despite those experiences, petitioners relied on their accountant, Mr. Brazil.

Petitioners' attempt to charter My Toy was their first attempt at chartering a fishing boat. Disregarding their negative experience with the sailboat, they sought out no independent expertise in the fishing boat chartering business. We also note that petitioners had experienced losses with respect to the Tahoe property. See discussion _infra_.

(6) _The taxpayer's history of income and loss with respect to the activity, and (7) the amount of occasional profits, if any, that are earned_. A record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's intention. _Cannon v. Commissioner_, 949 F.2d 345, 352 (10th Cir. 1991), affg. T.C. Memo. 1990-148; _Golanty v. Commissioner_, 72 T.C. at 426-427. Petitioners' chartering activities generated substantial losses, mostly attributable to depreciation, from 1985 through 1987. Petitioners used these losses to offset taxable income from other sources.

(8) _The financial status of the taxpayer_. During the period petitioners owned and attempted to charter the fishing boat, they received ample income from their full-time medical practice. Because of the relatively large amount of income from their medical practices, petitioners attempted to obtain tax benefits by claiming the losses generated by the chartering activities.

(9) _The presence of elements of personal pleasure or recreation_. Unlike the sailboat, petitioners did not have any interest in or use of the fishing boat.

Petitioners failed to conduct any meaningful investigations of the fishing boat venture, and they relied on their accountant. That reliance is not reasonable under circumstances where the accountant has not been shown to have had any expertise. Petitioners had loss experiences with the chartering of their sailboat, and they did not attempt to determine if the same problems could occur with chartering the fishing boat. Their lack of action and lack of interest regarding the operation of the fishing boat charter reflect that their motivation was primarily tax benefits. Further inquiry might have given petitioners insight into the likelihood of many of the problems that they encountered. See Thomas v. Commissioner, 84 T.C. 1244, 1278 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

Based on the entire record, we are not convinced that petitioners' primary objective was to make a profit. See Snyder v. United States, 674 F.2d 1359, 1362-1364 (10th Cir. 1982). Petitioners did not have an actual and honest objective of making an economic profit independent of tax savings. We hold that petitioners' fishing boat chartering activity was not engaged in for profit within the meaning of section 183(c).

IV. Tahoe Rental Activity[6]

Petitioners acquired a residence in Tahoe by paying $11,000 in mortgage payment arrears and by accepting responsibility for

---

[6] If we find that petitioners' residential rental activity was engaged in for profit, then petitioners concede that the loss limitation rules under sec. 280A(e) apply.

the $95,000 mortgage balance.  The residence was located in a popular winter vacation area.  No business analysis or plan was prepared by petitioners, who did not have any experience in the rental property business.  Petitioners did not consult with their accountant in connection with the purchase or operation of their Tahoe property.  Petitioners, on their joint income tax returns for 1983 through 1988, claimed losses ranging from a low of $16,107 to a high of $21,385, with an average of $19,066 attributable to their Tahoe residential property.  Those losses resulted from the excess of claimed deductions for maintenance, interest, taxes, and depreciation over rental receipts.  The annual rental receipts for the period ranged from a low of $300 to a high of $1,238, with an average of $711.

Petitioners did not place the Tahoe property with a real estate agent for rental purposes or consult with their accountant in connection with their investment in the Tahoe property. Petitioners did not keep separate records for the Tahoe property, and their only attempts to advertise its rental availability were to post flyers at the hospitals where they practiced medicine. Petitioners, on occasion, spent winter weekends at the Tahoe property.  They did not use the property off-season (e.g., during the summer).

(1) <u>Manner in which the taxpayer carries on the activity</u>. Attempts to publicize the rental property were insignificant. Petitioners did not prepare a written business plan prior to their purchase of the Tahoe property.  No separate books and

records or bank accounts were maintained.  No action was taken in later years to address the lack of rental in earlier years.

(2) _The expertise of the taxpayer or his advisers_.  Petitioners were not shown to have had experience or to rely on others with expertise regarding their Tahoe rental activity.

(3) _Time and effort expended by the taxpayer in carrying on the activity_.  Petitioners practice medicine on a full-time basis.  They spent little time with the rental activity, other than by Mr. Hilliard's making some repairs during petitioners' occasional trips to the property.

(4) _Expectation that assets used in the activity may appreciate in value_.  Mr. Hilliard purchased the property in connection with a foreclosure and sold the property for a gain. No analysis was conducted with respect to the potential for profit from the rental of the property or with respect to the potential for gain from any appreciation of the Tahoe property.

(5) _The success of the taxpayer in carrying on other similar or dissimilar activities_.  Petitioners experienced losses from their Tahoe rental activity for several years prior to the years in question, and, in addition, they had experienced losses regarding the sailboat chartering activities.

(6) _The taxpayer's history of income and loss with respect to the activity, and (7) the amount of occasional profits, if any, that are earned_.  A record of substantial losses over many years, coupled with little potential for profit are important factors bearing on the taxpayer's intention.  _Cannon v._

Commissioner, 949 F.2d at 352; Golanty v. Commissioner, 72 T.C. at 426-427.  Petitioners generated substantial losses from their rental activity, mostly from depreciation, and were able to shelter their medical income with the losses.

(8) The financial status of the taxpayer.  Because of petitioners' income from their medical practices, they obtained significant tax benefit from the rental activity losses.

(9) The presence of elements of personal pleasure or recreation.  Mr. Hilliard went to the property occasionally to do repairs; however, petitioners used the property for personal trips and recreational purposes.

We hold that petitioners' Tahoe rental activity was not engaged in for profit within the meaning of section 183(c).

V.  Automobile Expenses

During the years in issue, petitioners owned four automobiles.  Mrs. Hilliard drove the Mercedes, which was used to commute to work, to drive between different work locations, and for personal errands.  Her offices were in Oakland, California, for all of the years in issue and in San Ramon, California, for 3 months during 1986.  The commute from Mrs. Hilliard's residence to her office was 8 to 9 miles, and the distance between the San Ramon and Oakland offices was 15 miles.  Mrs. Hilliard made early morning rounds in two hospitals:  one which was about 3 miles from her Oakland office, and the other was less than 1 mile from her Oakland office.  The majority of her patients were at the

hospital that was closer to her office. For the 3 months during 1986 when Mrs. Hilliard maintained two offices, she would drive 1 day each week from Oakland to San Ramon and then home.

Petitioners claimed 85 percent business use of Mrs. Hilliard's automobile, and respondent, in the notice of deficiency, determined 17 percent business use. At trial, Mrs. Hilliard estimated about 50 to 60 percent business use.

Section 274(d)(4) (which is effective for taxable years beginning on or after January 1, 1986, the beginning of the first year in issue) requires substantiation by adequate records or evidence, in addition to mere testimony, to be entitled to travel expenses. Petitioners offered no records or other evidence of the business use of Mrs. Hilliard's automobile other than her testimony, which was expressed in terms of an estimate. Petitioners have not met the section 274(d) requirements necessary to show entitlement to transportation deductions in excess of the amounts allowed by respondent. Rule 142(a).[7]

VI. Mortgage Interest

Petitioners, for 1988, claimed $85,151 of mortgage interest. Respondent's agent was shown substantiation for $83,216 of mortgage interest. Petitioners, for 1987, claimed $33,629 of mortgage interest, and respondent determined that all

---

[7] Our determination of Mrs. Hilliard's automobile use results in an adjustment to her self-employment income, which in turn increases her self-employment tax liability. This adjustment is automatic (purely mathematical) and requires no further discussion.

but $614 was substantiated by petitioners.  In the notice of deficiency, respondent determined that petitioners overstated their mortgage interest deductions for 1987 and 1988 by $614 and $8,315, respectively.  On brief, respondent conceded a portion of the mortgage interest deduction for 1988, and $1,935 remains in controversy for 1988.  Petitioners failed to present any evidence substantiating the disallowed mortgage interest of $614 for 1987 or the $1,935 remaining in dispute for 1988.  Accordingly, petitioners are not entitled to deductions for mortgage interest for 1987 and 1988 in excess of the amounts determined by or agreed to by respondent.

VII. <u>Negligence</u>

Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).  Petitioners bear the burden of proving that respondent's determination of negligence is erroneous.  Rule 142(a); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

A taxpayer can avoid liability for the addition to tax for negligence if the taxpayer can show that he reasonably relied on the advice of a competent and experienced accountant or attorney to prepare his return.  <u>Weis v. Commissioner</u>, 94 T.C. 473, 487 (1990); <u>Conlorez Corp. v. Commissioner</u>, 51 T.C. 467, 475 (1968). The taxpayer must show that all necessary information was supplied to the return preparer and that the error on the return resulted from the preparer's mistake.  <u>Pessin v. Commissioner</u>, 59

T.C. 473, 489 (1972); Enoch v. Commissioner, 57 T.C. 781, 803 (1972); see Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

Petitioners claimed to have relied solely on their accountant. Such reliance, to mitigate negligence, must be reasonable. Petitioners are college- and medical school-educated individuals who pursued rental and charter activities with the sole or primary purpose of off-setting ordinary income from their professional activities. They paid little attention to information provided by the promoter, and they did not make business plans or seek professional advice regarding their rental and charter activities. Petitioners' accountant was not shown to have expertise in the boat charter business, nor did petitioners show that their reliance on him was reasonable under the circumstances. After making the investment in the fishing boat, petitioners paid little or no attention to the major asset of their activity, a boat with a value approaching $200,000. All that mattered to them were the deductions.

With respect to their sailboat and Tahoe property, those assets were available for petitioners' personal use and no meaningful efforts were made to seek a profit or to improve the circumstances after repeated losses and lack of rental income were experienced. Petitioners' claim of reliance upon their accountant or return preparer does not entitle them to avoid the imposition of an addition to tax for their negligence.

Accordingly, we find that petitioners are liable for an

addition to tax for negligence under section 6653(a) for each of the taxable years in issue.

VIII. <u>Substantial Understatement</u>

Section 6661(a) imposes an addition to tax equal to 25 percent of the amount attributable to a substantial understatement. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1).

If an item is not attributable to a tax shelter, then any understatement may be reduced by amounts represented by items for which a taxpayer had substantial authority or which were adequately disclosed in the return or in a statement attached thereto. Sec. 6661(b)(2)(B)(i) and (ii).

Although the legal standards for evaluating section 183 cases are well-developed, petitioners have not argued or shown that there was substantial authority for their tax treatment of any of the items of income or expense that were adjusted by respondent or that any of the adjusted items were adequately disclosed on the returns for the period in controversy. Accordingly, to the extent that petitioners' understatement, for any taxable period under consideration, is substantial within the meaning of section 6661, petitioners are liable for the addition to tax for a substantial understatement under section 6661.

To reflect the foregoing and to reflect concessions and agreements of the parties,

<u>Decision will be entered under Rule 155</u>.