T.C. Memo. 1997-168


UNITED STATES TAX COURT


B. ALBERT AND BETTY M. HOLOWINSKI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4726-96.                    Filed April 7, 1997.


<u>Scott M. Estill</u>, for petitioners.

<u>Robert A. Varra</u>, for respondent.


MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  This case was assigned

pursuant to the provisions of section 7443A(b)(3) and Rules 180,

181, and 182.[1]

---

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes and accuracy-related penalties as follows:

| Years | Deficiencies | Sec. 6662(a) Penalties |
|-------|-------------|------------------------|
| 1992  | $1,905      | $381                   |
| 1993  | 3,570       | 714                    |
| 1994  | 2,029       | 406                    |

The issues are: (1) Whether petitioners' antique glassware sales activity was engaged in for profit within the meaning of section 183, and (2) whether petitioners are liable for the accuracy-related penalties pursuant to section 6662(a).

## Background

Petitioners resided in Littleton, Colorado, at the time they filed their petition. The facts may be summarized as follows.

Petitioner Betty M. Holowinski obtained a high school degree and attended 2 years of college where she studied political science. Petitioner B. Albert Holowinski served in the United States military for many years and, after his military retirement, worked in the aerospace industry. During his military service he obtained a bachelor's degree in business and a master's degree in urban affairs.

In 1992, both petitioners had retired. Early that year, Mrs. Holowinski became interested in buying and selling Victorian glassware. She thought they could make money and that they would have fun traveling around to various antique shops and flea markets looking for the glass. To gain some background knowledge

Mrs. Holowinski read a book entitled "How to Make Money in Antiques".  Mr. Holowinski spoke with an accountant, Alan Myers (Mr. Myers), about bookkeeping and tax matters.

In April 1992, petitioners began buying antique glassware. Petitioners continued to purchase antique glassware throughout the years in issue, focusing primarily on glass produced by a company named Westmoreland Glass (Westmoreland) that conducted business from 1875 to 1985.  Petitioners traveled to antique conventions and to antique shops throughout the central United States in search of Westmoreland glassware.  Petitioners' travels took them to various States including Kansas, Ohio, Tennessee, Iowa, Nebraska, Oklahoma, Texas, Arkansas, and Illinois. Petitioners envisioned purchasing glassware for approximately 40 to 50 percent of its potential resale value.  During the taxable years 1992, 1993, and 1994 petitioners spent $7,173, $7,471, and $4,144, respectively, for glassware.  Petitioners stored the glassware in their home, placing the inexpensive pieces in their basement and the more valuable pieces upstairs where the temperature remained constant.  Some glassware was displayed on the walls of various living areas of petitioners' home and in china cabinets.

Mrs. Holowinski spent approximately 40 hours per week on the antique glassware sales activity, which petitioners called Albe's Antiques, and Mr. Holowinski spent 20 to 30 hours per week.

Sales were generated by three methods: (1) Through advertisements in antique newsletters (newsletter sales); (2) at antique conventions, by selling out of their hotel room and at auctions (convention sales); and (3) by renting a showcase at the Colorado Antique Gallery (showcase sales). Sales were approximately evenly divided between the three methods. While the bulk of the glassware collection was located in their home, for security reasons petitioners never gave out their home telephone number or address. Rather, petitioners paid $50 a month plus a commission equal to 10 percent of sales to rent the showcase, which held approximately 100 pieces of merchandise. For 1992, 1993, and 1994, petitioners' sales from the three methods, before paying commissions on showcase sales, totaled $264, $1,583, and $2,253, respectively.

Petitioners kept detailed inventory records and a mileage log. They maintained a separate bank account for Albe's Antiques in 1992 and part of 1993, but closed the account in 1993 to save money on fees. Petitioners insured their inventory on their homeowners' policy. Albe's Antiques was licensed to do business and collect sales tax in Colorado.

Petitioners did not prepare any financial statements or income projections for Albe's Antiques. At the end of each taxable year, Mr. Myers prepared petitioners' tax returns based on information petitioners provided to him. Petitioners have not

prepared profit and loss statements for the years subsequent to those before the Court.

Mrs. Holowinski summarized the antique glassware sales activity as follows:

> Very few people know that we deal in antiques. There's no sign at the house -- first of all, because of where we live, we couldn't have a business.
>
> So * * * [the business is] very low-keyed, we keep a low profile, and it's only through the mail or when we go on these conventions * * *.

On their 1992, 1993, and 1994 Federal income tax returns, petitioners reported losses from the antique glassware sales activity in the amounts of $9,504, $12,734, and 11,664, respectively. In summary, the losses were computed as follows:

|  | 1992 | 1993 | 1994 |
| --- | --- | --- | --- |
| Sales | $264 | $1,583 | $2,253 |
| Cost of Goods Sold | 170 | 973 | 1,453 |
| Gross Profit | 94 | 610 | 800 |
| Expenses: | | | |
| Commissions and fees[2] | 63 | 165 | 110 |
| Car, truck & travel | 7,391 | 10,626 | 9,665 |
| All other expenses | 2,144 | 2,553 | 2,689 |
| Net Loss | (9,504) | (12,734) | (11,664) |

In the notice of deficiency respondent determined that petitioners were not entitled to deductions for the net losses listed above because their antique glassware sales activity was

---

[2]  The commission expenses are listed in the amounts reported on petitioners' tax returns for the years in issue. We recognize that these numbers do not square with the reported sales figures and the formula provided by petitioners for computing commissions on showcase sales. We speculate that petitioners may have sold some items and incurred commissions at auctions and at antique conventions they attended.

not engaged in for profit. Respondent further determined that petitioners were liable for an accuracy-related penalty for each year in issue pursuant to section 6662(a) for negligence or disregard of rules or regulations. In addition, respondent made certain computational adjustments as a result of the disallowance of the Schedule C losses.[3]

## Discussion

### A. Activity for Profit

Section 162(a) allows deductions for ordinary and necessary expenses in carrying on a trade or business. Section 183(a) generally provides that an individual's deductions attributable to an activity not engaged in for profit shall only be allowed to the extent provided in section 183(b). Section 183(b) generally limits the deductions from an activity not engaged in for profit to the sum of (1) otherwise allowable deductions, and (2) any other deductions attributable to the activity to the extent the gross income from the activity exceeds the otherwise allowable deductions. Section 183(c) defines an "activity not engaged in for profit" as any activity other than one for which deductions are allowable under section 162 or under paragraph (1) or (2) of section 212. The test for determining whether an individual is carrying on a trade or business under section 162, or whether an

---

[3] The computational adjustments affect the amount of petitioners' Social Security benefits that are taxable for certain years, and petitioners' medical expense deduction for 1994.

individual is engaged in an activity for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income under section 212, is whether the individual is engaged in the activity with the predominant purpose and intention of making a profit. Nickeson v. Commissioner, 962 F.2d 973, 976 (10th Cir. 1992), affg. Brock v. Commissioner, T.C. Memo. 1989-641; Allen v. Commissioner, 72 T.C. 28, 33 (1979). While the taxpayer's expectation need not be reasonable, it must be a good-faith expectation. Allen v. Commissioner, supra at 33. In resolving the factual question of the taxpayer's intent, greater weight is given to the objective facts than to the taxpayer's statements of intention. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to be used to determine whether an activity is engaged in for profit. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the

financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  No single factor, nor a simple numerical majority of factors, is necessarily controlling.  Cannon v. Commissioner, 949 F.2d 345, 350 (10th Cir. 1991), affg. T.C. Memo. 1990-148.

Several factors weigh slightly in petitioners' favor. First, petitioners generally carried on the activity in a businesslike manner.  They maintained accurate inventory records, obtained a Colorado business license, registered with the State to collect sales tax, advertised in antique newsletters although in a limited fashion, and rented a showcase at the Colorado Antique Gallery.

On the other hand, some factors weigh heavily in favor of respondent.  Petitioners reported no profits, but rather substantial losses for the years in issue.  See Golanty v. Commissioner, 72 T.C. 411, 427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  While losses in the early years of an activity may not be indicative of the absence of a profit motive, several facts convince us otherwise in this case. First, petitioners reported losses of more than eight times the total sales reported for the years in issue (total sales). Petitioners incurred traveling expenses in excess of six times the total sales.  Considering only cost of goods sold and direct selling expenses (commission expenses and the $50 a month showcase rental) petitioners posted a cumulative loss for the

years in issue.  Indeed, assuming petitioners liquidated all of the inventory they purchased during the years in issue and that they were able to purchase it at 40 percent of the hypothetical sale value, the ensuing gross profit would not even cover the cost of their traveling expenses.  Stated more bluntly, petitioners' traveling expenses were so grossly in excess of their total sales that petitioners had no prospect of ever turning a profit.[4]

Furthermore, we find it telling that for subsequent years petitioners have not even prepared a profit and loss statement.  Surely, if a person were concerned with making a profit, she or he would be interested in whether in fact there was or would be a profit or loss from the activity.

Finally, petitioners admittedly derived personal pleasure from antique hunting and possibly from displaying their more valuable pieces of antique glassware in their home.  We are cognizant of the fact that there is no general prohibition on pursuing a business that one enjoys.  See Larson v. Commissioner, T.C. Memo. 1991-99.  We are also cognizant that the Federal fisc should not help underwrite personal pursuits.  See Stanley v. Commissioner, T.C. Memo. 1980-217.

In sum, after considering all the relevant factors, we conclude that, while petitioners may have intended to earn a

---

[4]   We note that petitioners' travel records showed that of the 34 days traveling in 1993, 10 were spent in the Dallas/Fort Worth area where petitioners' daughter lived.

profit on individual items of glassware, when the activity is viewed in its entirety, petitioners did not engage in the antique glassware sales activity for profit.

B. Penalties

Section 6662(a) and (b)(1) impose a penalty equal to 20 percent of any portion of an underpayment attributable to negligence or disregard of rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Section 6664(c)(1) provides that no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and the taxpayer acted in good faith. Whether the taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis taking into account all of the pertinent facts and circumstances. Remy v. Commissioner, T.C. Memo. 1997-72. Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant. Drummond v. Commissioner, T.C. Memo. 1997-71. An honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. Remy v. Commissioner, supra.

The determination of whether petitioners engaged in their antique glassware sales activity for profit involves a difficult factual question.  See, e.g., <u>Cavalaris v. Commissioner</u>, T.C. Memo. 1996-308.  Petitioners substantiated all of the claimed expenses and employed an accountant to prepare their tax returns and advise them.  Nothing in the record suggests that their reliance on Mr. Myers was less than reasonable, particularly considering petitioners' lack of prior business experience and educational backgrounds.[5]  Accordingly, we find that petitioners acted with reasonable cause and in good faith, and, therefore, the penalties do not apply.

<u>Decision will be entered for respondent with respect to the deficiencies, and decision will be entered for petitioners with respect to the penalties under section 6662(a).</u>

---

[5]  While Mr. Holowinski did obtain his undergraduate degree in business administration, he did so many years prior to those in issue.  His work experience did not focus on business or financial skills, and he does not appear to have any special training in accounting or tax matters.