T.C. Memo. 2002-33

UNITED STATES TAX COURT

CHRISTOPHER JOSEPH BUSH AND ROBIN LEIGH PICKERING, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7401-00.          Filed February 4, 2002.

Christopher Joseph Bush and Robin Leigh Pickering, pro sese.

Michele A. Yates, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, Special Trial Judge:  Respondent determined a
deficiency of $2,593 in petitioners' 1996 Federal income tax.
Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined that certain deductions were not ordinary and necessary expenses incurred while carrying on a trade or business. We must decide whether petitioners are entitled to deduct on Schedule C, Profit or Loss from Business, cost of goods sold and various business expenses for 1996; we hold that they are not. We must also decide whether respondent's notice of deficiency is valid; we hold that it is.

Some of the facts have been stipulated and are so found. The exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioners resided in Alexandria, Virginia. Petitioners are husband and wife. References to petitioner in the singular are to Christopher Joseph Bush unless otherwise noted.

## FINDINGS OF FACT

In 1996, petitioner established Aspiring Artists, a sole proprietorship whose stated purpose was to manage and develop artistic talent. In this pursuit, petitioner represented a band and entered into an agreement with his stepdaughter Jennifer Hummer (sometimes Jennifer or petitioners' daughter or petitioner's stepdaughter).

Petitioners filed a joint return in 1996. Petitioners attached to their 1996 Federal income tax return a Schedule C on which they reported $3,550 of gross receipts and claimed various deductions relating to Aspiring Artists.

Aspiring Artists' only contract, entered into in October of 1996, was with petitioners' daughter.[1] Despite having entered into this contract in October of 1996, petitioners deducted expenses incurred throughout the entire calendar year.

Jennifer was a high school student at Salem High School (Salem). In addition to the time she spent at Salem, Jennifer worked three part-time jobs to help support the pursuit of her ultimate career goal of becoming a successful ballerina. To help attain her goals Jennifer trained at the Virginia School of the Arts in Lynchburg (VSA). VSA serves as a training ground for people hoping to develop careers in the fine arts, particularly those interested in dance. VSA is an expensive place to receive an education.

Petitioners shared Jennifer's hope that one day she would have a successful career as a ballerina. To support both their daughter's and their aspirations, petitioners helped Jennifer in any way possible. To help save on room and board petitioners had Jennifer live at their home and commute the 70 miles to and from VSA six times each week. Petitioners paid for all expenses related to Jennifer's commute, including gasoline, oil changes, service, and repairs. In addition, petitioners paid for

---

[1] Jennifer turned 18 years old in July 1996. Prior to attaining the age of majority, Jennifer and petitioner had a tacit agreement that she would, in one manner or another, pay him back for some of the money he spent supporting her pursuit of a ballet career.

supplies, pointe shoes, clothing, VSA's tuition, and other expenses. Essentially, petitioners took care of any expense Jennifer had, including medical bills.

Jennifer's contract with Aspiring Artists purports to be a talent-agent agreement. The contract states petitioner's responsibility to pay for Jennifer's supplies, commuting, dance classes, and other expenses. According to its terms, the contract required that Jennifer pay $488 a month to Aspiring Artists to help pay for tuition at VSA and other related costs. Petitioners' daughter was allowed to pay less than $488 per month if Aspiring Artists determined that she was "overburdened". Jennifer paid less than the $488 for the first 3 months of the contract, October, November, and December of the year in issue, because her parents decided that it was important for her to spend her time focusing on end of the year performances. Jennifer's contract included a "four-year out" provision that bound her to pay 10 percent of "gross dance-related income" over the first 40 months (four 10-month dance seasons) of her ballet career.

Petitioner contacted professionals in the dance industry inquiring about the best method of getting an aspiring dancer a permanent job with a dance company. Petitioner focused his energies on securing a job for his stepdaughter. Petitioner, however, failed to develop other aspects of Aspiring Artists such

as drafting a business plan or long-term financial analysis of the profitability of Aspiring Artists.

As a result of petitioner's efforts and Jennifer's hard work and skill, the New York Theatre Ballet (NYTB) extended her an offer of employment. Jennifer's contract, entered into in August of 1997, engaged her as an apprentice dancer from August through December of 1997. The period of the contract included training and rehearsal time as well as 3 weeks of "The Nutcracker Ballet" performances. Both petitioners and Jennifer were overjoyed with Jennifer's success.

On April 5, 2000, respondent sent to petitioners, by certified mail, a notice of deficiency. The notice of deficiency informed petitioners that respondent determined that the following $13,889 of Schedule C expenses petitioners deducted for expenses related to their daughter's dance education would not be allowed:

| Schedule C expenses deducted by petitioners | | Allowed |
|---|---|---|
| Mileage | $3,640 | $    0 |
| Advertising | 200 | 200 |
| Wages | 525 | 525 |
| Cost of goods sold | 150 | 0 |
| Depreciation | 54 | 54 |
| Employee benefits | 900 | 0 |
| Supplies | 1,500 | 1,500 |
| Meals | 900 | 0 |
| Utilities | 500 | 500 |
| Education and medical (other) | 1,557 | 0 |
| Travel | 7,871 | 1,129 |

OPINION

Schedule C Deductions

Petitioners maintain that all deductions were part of a legitimate business whose primary objective was to earn a profit. Respondent's position is that the contested deductions are unsubstantiated personal expenses.

Section 162(a) allows deductions for ordinary and necessary expenses paid or incurred in carrying on a trade or business. Generally, no deduction is allowed for personal, living, or family expenses. Sec. 262.

In this case, petitioner's agreement with his stepdaughter was in furtherance of the personal desires of both parents and daughter that Jennifer should prepare herself for a career as a ballerina. Petitioners have not shown that payments for one's own daughter's training and education conditioned upon the commitment of her future earnings are ordinary and necessary business expenses.

Generally, under section 183(a) and (b) individuals are not allowed deductions attributable to an activity "not engaged in for profit" except to the extent of gross income generated by the activity. Section 183(c) defines an activity "not engaged in for profit" as any activity other than one for which deductions are "allowable * * * under section 162 or under paragraph (1) or (2)

of section 212." For deductions to be allowed under section 162 or section 212(1) or (2), taxpayers must establish that they engaged in an activity with the actual and honest objective of making an economic profit independent of tax savings. Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The expectation of profit need not have been reasonable; however, taxpayers must have entered into the activity, or continued it, with the objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs.

Whether the requisite profit motive exists is determined by evaluating all surrounding facts and circumstances. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to taxpayers' self-serving statements of intent. Westbrook v. Commissioner, 68 F.3d 868, 875-876 (5th Cir. 1995), affg. T.C. Memo. 1993-634; sec. 1.183-2(a), Income Tax Regs. Taxpayers bear the burden of proving that they engaged in the activity with the intent of making a profit.[2] Rule 142(a).

Section 1.183-2(b), Income Tax Regs., contains a nonexclusive list of factors to be used in determining whether an

---

[2] We do not find that the burden shifting provisions of sec. 7491 apply.

activity is engaged in for profit. These factors are: (1) The manner in which the taxpayers carry on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayers in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profit, if any; (8) the financial status of the taxpayers; and (9) elements of personal pleasure or recreation. No single factor, nor the existence of a majority of factors favoring or disfavoring a profit objective, is necessarily controlling. Cannon v. Commissioner, 949 F.2d 345, 350 (10th Cir. 1991), affg. T.C. Memo. 1990-148.

Taking into account the relevant factors outlined above, and considering the facts and circumstances relating to Aspiring Artists' activities, we are not persuaded that petitioner engaged in those activities with the objective of making a profit.

Petitioner attempted to show that he managed some aspects of Aspiring Artists in a businesslike fashion. Petitioner maintained detailed records relating to car expenses including repair costs, gasoline receipts, and miles traveled by his stepdaughter. It appears, however, that those records were maintained primarily to support tax deductions, not as a record

of business operations. Petitioner maintained a separate checking account for Aspiring Artists, but Jennifer's mother, petitioner Robin Leigh Pickering, made some VSA tuition payments out of her personal checking account. Commingling of funds indicates that an activity is more closely related to a hobby than a business. See Lundquist v. Commissioner, T.C. Memo. 1999-83, affd. without published opinion 211 F.3d 600 (11th Cir. 2000). While petitioner claims to have advertised Aspiring Artists' services during the year in issue, this Court finds that there is no evidence of "advertising" until August of 1997. Petitioner's "advertising" efforts consisted of soliciting students interested in commuting to VSA for a fee. Had the solicitations been effective, the fees would merely have mitigated the cost of Jennifer's auto expenses.

Additionally, petitioner failed to create any type of business plan which outlined strategies ensuring a profitable business venture. Petitioner failed to create any type of budget or break-even analysis. Petitioner did not know when, or how, if ever, he would make a profit, and there was no concerted or articulated effort to make that a reality. Such lack of information upon which to make educated business decisions tends to belie a taxpayer's contentions that an activity was pursued with the primary objective of making a profit. Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion

188 F.3d 507 (6th Cir. 1999); see also <u>Nova v. Commissioner</u>, T.C. Memo. 1993-563.  Thus, we find that petitioner did not operate Aspiring Artists in a businesslike manner.

Petitioner spoke with two people who are involved in the dance industry.  It appears, from the record, that petitioner spoke with each of the identified "experts" only once.  Petitioner solicited advice regarding securing auditions for his stepdaughter.  Petitioner testified that one expert advised him to have Jennifer "go to a company class with a major company.  And she would be the only person dancing with the whole corps de ballet."  Petitioner followed this advice.

Petitioners themselves, however, had no prior dance experience.  Petitioner states that because his stepdaughter has taken dance classes for more than 10 years Ms. Pickering's knowledge and experience over those 10 years qualifies her as an expert.  But petitioner did not seek any advice on how to start or maintain a business as a talent adviser.  Petitioner did not contact any "expert" regarding the standard business practices and economics of running his own talent agency.  See <u>Burger v. Commissioner</u>, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523.  While petitioners might have had some familiarity with the dance industry, that experience does not translate into the ability to operate a profitable business.  <u>Zidar v. Commissioner</u>, T.C. Memo. 2001-200.  We are not persuaded by the evidence on the

record that petitioner's experience, or his scant contact with "experts", supports his contention that he entered this venture with the objective of making a profit. <u>McCarthy v. Commissioner</u>, T.C. Memo. 2000-135; <u>DeMattia v. Commissioner</u>, T.C. Memo. 1998-87.

It is apparent from the record that petitioner had no reason to expect appreciation in the value of his agreement with Jennifer. See sec. 1.183-2(b)(4), Income Tax Regs. Petitioner spent the majority of his money on the cost of tuition at VSA, travel, and automobile expenses. The evidence shows that the only opportunity for petitioner to recoup his investment was through his agreement with Jennifer securing for himself 10 percent of her dance-related income.

The value of the agreement is at best, speculative. Jennifer's NYTB contract paid her approximately $5,200 for a 10-month dance season.[3] Respondent disallowed $13,889 of the expenses petitioners claimed for Jennifer in 1996. Because her agreement states that she will repay Aspiring Artists 10 percent of her dance-related earnings, she would need to earn more than

_____

[3] This computation is based on Jennifer's contract with NYTB which compensated Jennifer as follows:

> Your gross performance compensation will be as follows: Nutcracker Tour ($300 per week), NYC Nutcracker season (flat fee of $300). In addition, during rehearsal periods you will be compensated at the rate of $100 per week.

$138,890 in the first 40 months of her dance career for petitioner to break even on his investment.  See DeMattia v. Commissioner, supra; Nova v. Commissioner, supra.

Petitioner makes repeated references to the fact that he was unable to afford to send his stepdaughter to VSA without her working part-time jobs to help with expenses.  Petitioner asserts that as a result of his financial status this factor necessarily falls in his favor.  We disagree.  Pearson v. Commissioner, T.C. Memo. 1996-66.  Petitioners' income from wages in 1996 was $21,584.  In addition, petitioner received $11,700 in gross receipts from activities related to his chess company.  Petitioners were by no means wealthy; however, the deductions with respect to Aspiring Artists reduced their tax liability.  In addition, petitioners benefited from the personal pleasure involved in watching their daughter grow into a ballerina.  Even if we were to find that this factor supported petitioners' position, it would not outweigh the other factors.

The existence of personal or recreational elements in an activity may indicate that the activity is not engaged in for profit.  Where an activity, however, lacks any appeal other than profit, a profit objective may be indicated.  See sec. 1.183-2(b)(9), Income Tax Regs.  Where the possibility of making of profit is small (given the other factors) and the personal satisfaction is substantial, it is clear that the latter

possibility constitutes the greater motivation for the activity. Stasewich v. Commissioner, T.C. Memo. 2001-30 (quoting Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987)).

Petitioner's testimony throughout trial consistently refers to the pride instilled in him by Jennifer's hard work and success. He indicated that Jennifer worked especially hard to go to high school, work, and simultaneously attend VSA. Petitioner was very pleased that all of his stepdaughter's hard work paid off with a contract with NYTB. The vast majority of the Schedule C expenses claimed for the year in issue were attributable to Jennifer's training, attire, and travel for her dance education. This fact, coupled with the factors enumerated above, indicates that petitioner did not engage in this activity out of motivation for profit. Instead, petitioner's primary motivation was that of pride and personal gratification. See Whalley v. Commissioner, T.C. Memo. 1996-533.

It is plain to this Court that petitioner's primary and dominant motivation with respect to expenditures for Jennifer's ballet training was familial. The record shows that despite not being an agent or employee of Aspiring Artists, Ms. Pickering paid for some of Jennifer's dance expenses. Petitioners wanted what most parents want for their children, for them to be successful in their chosen careers. McCarthy v. Commissioner,

supra; <u>DeMattia v. Commissioner</u>, <u>supra</u>; <u>Nova v. Commissioner</u>, T.C. Memo. 1993-563

Section 262(a) prohibits taxpayers from taking deductions for expenses that are inherently personal, living or family expenses. The purchase of school supplies, including pointe shoes and other dance clothing is a nondeductible personal and family expense. <u>Werbianskyj v. Commissioner</u>, T.C. Memo. 1975-93. The cost of providing a ballet education is also a nondeductible personal expense. See <u>Cooper v. Commissioner</u>, 264 F.2d 889, 891 (4th Cir. 1959), affg. per curiam T.C. Memo. 1958-169; <u>Ates v. Commissioner</u>, T.C. Memo. 1985-469; sec 1.262-1(b)(9), Income Tax Regs. We hold that the disallowed Schedule C deductions for Jennifer's pointe shoes, clothing, and dance tuition were all nondeductible personal and family expenses. We hold further that petitioners' Schedule C deductions related to Jennifer's dance education are allowable up to $3,550, Aspiring Artists' gross receipts, less those deductions allowed irrespective of the lack of a profit motive. Sec. 183(b)(2).

We similarly find that the cost incurred by petitioners for Jennifer's medical expenses is a personal family expense, the deduction of which is prohibited by section 262, except as allowed by section 213. Jennifer was covered by the health insurance policy owned by her father. Petitioner purported to create a "Self Insured Medical Plan Aspiring Artists Company".

Under the "plan", petitioner agreed that Aspiring Artists would pay up to the $500 deductible for Jennifer's medical expenses not covered by her father's insurance policy.  Petitioner signed the handwritten document creating the "medical plan" agreement dated August 1, 1996.  There were, however, outstanding medical expenses from March or earlier of 1996.  From the record it appears as though these expenses stem from a period of time prior to their daughter's commencing her education at VSA.  All the payments made with respect to Jennifer's medical expenses were made by personal checks, most of them on checks drawn by Ms. Pickering.  This Court finds that Jennifer's medical expenses are not deductible on Schedule C as business expenses, but petitioners may claim them on Schedule A, Itemized Deductions, subject to the 7.5-percent limitation of section 213(a).

Validity of the Notice of Deficiency

Petitioners contend that the notice of deficiency issued by respondent is invalid because it specified July 4, 2000, a legal holiday, as the last day on which petitioners could file a petition with the Tax Court.  The notice of deficiency states that if petitioners want "to contest this determination in court before making any payment, you have 90 days from the date of this letter * * * to file a petition with the United States Tax Court for a redetermination of the deficiency."  Petitioners urge this Court to hold that identifying a legal holiday as the last

possible date on which petitioners could file a timely petition with this Court renders the notice of deficiency invalid pursuant to section 3463(a) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 767.

Petitioners' research curiously failed to uncover section 7503, which states that "When the last day prescribed under authority of the internal revenue laws for performing any act falls on * * * a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a * * * legal holiday."

Even when the Commissioner fails to state the petition date on the notice of deficiency but the taxpayer nonetheless receives the notice and, files a timely petition, the notice is valid. Smith v. Commissioner, 114 T.C. 489, 492 (2000), affd. 275 F.3d 912 (10th Cir. 2001). Pursuant to section 7503, the final date on which petitioners could have filed a timely petition with this Court was Wednesday, July 5, 2000, one day later than the date on the notice of deficiency. Petitioners filed their petition with the Tax Court on July 3, 2000, within the time prescribed by statute. Therefore, this Court rejects petitioners' argument.

From an analysis of the facts and circumstances in this case, we hold that petitioner did not operate Aspiring Artists' relationship with his stepdaughter with the actual and honest objective of making a profit. Thus, the activity cannot be

considered a trade or business for purposes of section 162(a). Accordingly, we sustain respondent's determination that petitioners are not allowed certain Aspiring Artists Schedule C deductions for the expenses claimed for the year in issue in excess of the gross income reported by the activity.

The Court has considered all other arguments advanced by petitioners, and to the extent not discussed above, has found those arguments to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.