T.C. Summary Opinion 2002-115

UNITED STATES TAX COURT

RONALD L. HEIDRICK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9964-00S.                    Filed September 3, 2002.

<u>Dennis R. Watt</u>, for petitioner.

<u>Jeremy L. McPherson</u>, for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.

---

[1]  Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
years at issue.  All Rule references are to the Tax Court Rules
of Practice and Procedure.

Respondent determined deficiencies of $5,354, $14,599, and $6,159 in petitioner's Federal income taxes for 1994, 1995, and 1996, respectively, a $21 addition to tax under section 6651(a)(1) for 1995, and accuracy-related penalties under section 6662(a) in the amounts of $1,070.80, $2,919.80, and $1,231.80, respectively, for the years at issue.

The issues for decision are: (1) Whether petitioner's gold mining activity was an activity not engaged in for profit under section 183(a) during the years in question; (2) whether petitioner is entitled to certain deductions attributable to the activity; (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for 1995; and (4) whether petitioner is liable for accuracy-related penalties under section 6662(a) for 1994, 1995, and 1996.[2]

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and are made part hereof. Petitioner's legal residence at the time the petition was filed was Georgetown, California.

During the years at issue, petitioner worked as a deck engineer and hydraulic equipment operator for a dredging and

---

[2] Numerous other issues were settled by the parties both prior to and during trial involving a child care tax credit, a cost of goods sold deduction, certain unreimbursed employee business expenses, the amount of applicable self-employment tax, and amounts allowable on Schedule C, Profit or Loss From Business, as expenses relating to the business activity at issue.

construction company.  His employer was not in the gold mining business.  Petitioner began searching for gold using a pan, shovel, and pick in 1982.  In 1989, using his knowledge of dredging gained from his employment, he began mining for gold in rivers and streams in the foothills of mountains.  Petitioner maintained his regular job, expecting that the mining activity would supplement his income.  He mined sometimes at night but mostly on weekends because of the demands of his regular job.  He was able to perform additional mining during layoff periods.

Petitioner read mining literature and attended a few meetings with others interested in gold mining but otherwise had no formal training in the activity.  He admired the work of author Dave McCracken, who has made a profit in gold dredging.  According to petitioner, the McCracken operation enlists others to dredge for the gold that McCracken ultimately keeps.  Other than a window-washing business in 1978 or 1979, petitioner was not engaged in other trade or business activities.

Petitioner's gold mining activity involved time, effort, money, and risk.  After identifying a site for prospecting, petitioner would haul heavy dredging equipment to the site.  He was a certified scuba diver.  To search for gold, he would dive to depths of 25 to 30 feet and operate the dredging equipment for up to 8 to 10 hours.  Mud, gravel, and other material from the river were brought up and screened through what was referred to

as a sluice box. Any gold found would remain in the sluice box, and the remaining material was returned to the river. Petitioner thereafter refined the material from the sluice box at his home and garage.

Whatever gold petitioner refined was stored in glass vials that held 1, 2, or 3 ounces each. Other than these vials, petitioner did not keep records of the amounts of his gold recoveries. He usually kept the vials in ammunition boxes buried underwater near his mining sites. In 1995, petitioner brought his gold home to bottle and weigh it, and it was stolen from a desk at his home. A police report was filed. Petitioner estimates that the gold that was stolen was worth $32,000.[3]

Following the theft to the time of trial, petitioner amassed approximately 2-1/2 pounds of gold, measured 12 troy ounces to the pound.[4] Petitioner sold $770, $1,540, and $585 worth of gold in 1994, 1995, and 1996, respectively, which he reported on his income tax returns for those years. In each of the years 1997 through 2000, petitioner sold less than $2,000 worth of gold. In the years at issue, petitioner made all of his sales to

---

[3] Petitioner did not claim a casualty loss deduction for the theft, and that question was not presented to the Court.

[4] Petitioner estimated his accumulated gold to be worth approximately $8,400 at the time of trial.

the same local jeweler but kept no receipts to document the transactions.

During the years at issue, petitioner kept a calendar that contained notations of his mileage, location, dates worked at the gold mining activity, and some expenditures. He wrote "San Andreas", "cement plant", or other notations on days he was dredging or tending to his equipment. These calendars indicate that petitioner worked approximately 39 days during 1994 and 37 days during 1995 either dredging for gold or working at home on his gold dredging equipment. No calendar for 1996 was introduced into evidence, nor was any testimony offered as to how much time petitioner spent on his activity that year.

With respect to expenses incurred in the gold mining activity, petitioner did not keep a general ledger or other formal records. He kept some store receipts and canceled checks for items purchased for the mining operation and had photographs of his dredging and gold mining equipment. Other expenses and items, such as mileage, were documented only by notations on petitioner's calendar or using receipts handwritten by petitioner or acquaintances who had sold petitioner pieces of equipment. At least some of these homemade receipts were not prepared contemporaneously with the transactions. Rather, petitioner admitted that he took inventory and gathered his receipts in 1997

(about the same time he filed his returns for the years at issue).

Petitioner utilized numerous items of equipment, tools, and supplies in his gold mining activity. These items included dredges, trailers, winches, tools, dive gear, rigging, a 1956 Ford truck, a 1972 Smoker craft, a 1974 Chevrolet van, and a 1978 Toyota. Petitioner performed his mining activity alone using this equipment.

Petitioner filed his 1994 and 1995 Federal income tax returns on April 17, 1997. Beginning with the 1994 return, petitioner reported the income and expenses from his gold mining activity on Schedule C, Profit or Loss From Business.

On his tax returns, petitioner reported wage income of $42,701, $74,700, and $87,981, respectively, for 1994, 1995, and 1996. He reported unemployment compensation of $1,930 in 1994, $460 in 1995, and $690 in 1996, and on Schedules C of his returns, he reported gross receipts from the sale of gold in the amounts of $770 in 1994, $1,540 in 1995, and $585 in 1996. Petitioner claimed depreciation deductions of $14,692 in 1994, $19,181 in 1995, and $9,181 in 1996. In 1996, petitioner reduced his gross receipts by cost of goods sold of $585.[5] Petitioner reported net losses from his gold mining activity of $18,164 in

---

[5] A $32,000 cost of goods sold claimed on the 1996 return and disallowed by respondent was conceded by petitioner.

1994, $54,413 in 1995, and $11,481 in 1996.  Petitioner also experienced net losses from the gold mining activity in the years subsequent to the years at issue.

Respondent determined that petitioner's gold mining activity was not an activity engaged in for profit under section 183(a).  On this and all other issues, petitioner bears the burden of proof.[6]

Section 183(a) provides that, if an activity engaged in by an individual is not engaged in for profit, no deduction attributable to such activity shall be allowed, except as provided in section 183(b).

To deduct expenses of an activity under either section 162 or 212 (and thus avoid the limitations of section 183), a taxpayer must show that he or she engaged in or carried on the activity with the objective of making a profit.  See sec. 1.183-2(a), Income Tax Regs.  In the U.S. Court of Appeals for the Ninth Circuit,[7] a taxpayer must show that the activity was

_____

[6] Sec. 7491 provides that, under certain circumstances, the burden of proof is on the Secretary with respect to a taxpayer's liability for taxes, penalties, and additions to tax in court proceedings arising in connection with examinations commencing after July 22, 1998.  The parties stipulated that the examination of petitioner's returns commenced prior to July 22, 1998.

[7] But for the provisions of sec. 7463(b), the decision in this case would be appealable to the U.S. Court of Appeals for the Ninth Circuit.  See sec. 7482(b)(1)(A).  This Court generally applies the law in a manner consistent with the holdings of the
(continued...)

entered into with the dominant hope and intent of realizing a profit. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993) (profit must be the predominant, primary, or principal objective), affg. T.C. Memo. 1991-212; Vorsheck v. Commissioner, 933 F.2d 757, 758 (9th Cir. 1991); Machado v. Commissioner, T.C. Memo. 1995-526, affd. without published opinion 119 F.3d 6 (9th Cir. 1997); Warden v. Commissioner, T.C. Memo. 1995-176, affd. without published opinion 111 F.3d 139 (9th Cir. 1997). This Court considers whether an activity is engaged in for profit on a case by case basis, taking into account the facts and circumstances involved. See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

The taxpayer's expectation of profit need not be reasonable, but it must be established that the activity was conducted with a good faith expectation of making a profit. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); Golanty v. Commissioner, supra at 425-426; sec. 1.183-2(a), Income Tax Regs. In assessing a profit motive, greater weight is given to objective facts over the taxpayer's mere statement of intent. Indep. Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726-727 (9th Cir. 1986),

---

[7](...continued)
Court of Appeals to which an appeal of its decision lies, Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), even in cases subject to sec. 7463(b).

affg. <u>Lahr v. Commissioner</u>, T.C. Memo. 1984-472; sec. 1.183-2(a), Income Tax Regs.

A nonexclusive list of factors set forth in the income tax regulations guides the section 183 analysis by providing relevant facts and circumstances to be considered in determining whether the requisite profit objective has been shown.  These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  Sec. 1.183-2(b), Income Tax Regs.

Although no one factor is conclusive, a record of substantial losses over many years and the unlikelihood of achieving a profit are indicative that an activity is not engaged in for profit.  <u>Hildebrand v. Commissioner</u>, 28 F.3d 1024, 1027 (10th Cir. 1994), affg. <u>Krause v. Commissioner</u>, 99 T.C. 132 (1992).  In evaluating the foregoing factors, the Court may consider evidence from years subsequent to the years in issue "to

the extent it may create inferences regarding the existence of a profit motive in the earlier years." Hillman v. Commissioner, T.C. Memo. 1999-255 (citing Hoyle v. Commissioner, T.C. Memo. 1994-592). "[A]ctual profits or losses in those and subsequent years have probative, although not determinative, significance in such evaluation." Smith v. Commissioner, T.C. Memo. 1993-140.

The fact that the taxpayer carries on an activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Other indicia of a profit objective include carrying on an activity in a manner substantially similar to other activities of the same nature that are profitable, changing operating methods, adopting new techniques, or abandoning unprofitable methods in a manner consistent with an intent to improve profitability. Id.

Gold mining and other similar speculative activities are different from most other business activities because they generally produce no significant income until a find is made, and then the income is earned in one lump sum. In Harrison v. Commissioner, T.C. Memo. 1996-509, this Court found that a taxpayer's contemporaneous handwritten lists of expenses were sufficient records of his gold mining and treasure salvaging

activity for purposes of section 183.[8]  The Court acknowledged in

that case:

> The treasure hunting activity was different from
> petitioner's other businesses.  Different record keeping
> methods are therefore expected, and lack of record keeping
> is not determinative of intent.  Treasure hunting is not the
> type of business where thorough records of gains and losses
> are necessary to a successful operation.  Cf. Farrell v.
> Commissioner, T.C. Memo. 1983-542.  This type of activity is
> likely to generate only expenditures with no income until a
> find is made at which time the income will come in one lump
> sum.  Therefore, we find that * * * contemporaneous
> handwritten lists of expenses were sufficient records for
> this type of activity.

In this case, petitioner did not maintain any

contemporaneous written record of the timing, location, and

amount of gold he recovered.  He stored his gold in vials that

would hold only specified amounts.  While the vials could provide

some visual indication of the amount of gold on hand, they were

kept buried in ammunition boxes under water at dredging sites,

making regular visual inventory difficult.  He maintained no

records of the gold so stored.  Such a practice, while

permissible, is hardly businesslike.  In addition, when

petitioner sold small amounts of gold, he kept no receipts.

Petitioner did maintain some written records of his

expenses, although not in an organized or systematic way and not

---

[8]     In Harrison v. Commissioner, T.C. Memo. 1996-509, the
Court treated the taxpayer's gold mining and treasure salvaging
operations as one activity for purposes of sec. 183.

for all his expenses.  These records mainly consisted of canceled checks, some store receipts, a significant number of handwritten, self-prepared, or "general purposes" receipts, and calendars for 1994 and 1995 with notations indicating locations, mileage, and a few expenses on given dates.   Some of these expense records were obviously prepared for trial.  Unlike the taxpayer in Harrison v. Commissioner, supra, petitioner did not keep records contemporaneously with his expenditures, at least not consistently.  No calendar for 1996 was introduced into evidence.

The manner in which petitioner kept records of his activity was not, in the traditional sense, businesslike.  The conclusion reached in Massingill v. Commissioner, T.C. Memo. 1996-162, affd. without published opinion 156 F.3d 1237 (9th Cir. 1998), also applies here:  "Petitioner's compendium is not an adequate substitute for books or records of income and expenses."

The nonbusinesslike manner in which petitioner conducted his gold mining activity weighs against him in the determination of whether the activity was carried on for profit.  Even with due recognition of the speculative nature of gold mining and prospecting, petitioner did not demonstrate that he kept the kinds of books and records that would have enabled him to evaluate the financial condition of his mining activities.  Nor did petitioner use his records to optimize profitability.  In Tinnell v. Commissioner, T.C. Memo. 2001-106, the Court stated:

"The purpose of maintaining books and records is more than to memorialize for tax purposes the existence of the subject transactions; it is to facilitate a means of periodically   determining profitability and analyzing expenses such that  proper cost saving measures might be implemented in a timely and efficient manner. * * *"
[Citations omitted.]

See also Steele v. Commissioner, T.C. Memo. 1983-63 (checks served as adequate substantiation for claimed expenses but were not businesslike records).  This factor favors respondent.

Preparation for the activity by extensive study of its accepted business, economic, and scientific practices or consultation with people who are expert in these practices may indicate a profit objective where the taxpayer carries on the activity in accordance with such practices.  Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner had personal experience that enabled him to conduct his gold mining activity.  He knew dredging from his primary job as a deck engineer and hydraulic equipment operator. He was a certified scuba diver.  He was skilled in the use of dredging equipment.  He studied mining literature and attended a few meetings with others interested in gold mining.  He gained gold dredging experience from years of prospecting prior to 1994.

However, petitioner did not consult with experts in the manner designed to establish how such an activity could be conducted profitably.  Petitioner's gold mining efforts,

including those made in the years prior to those at issue, had yielded what he valued as $32,000 worth of gold, all of which was stolen in 1995. Thereafter, he accumulated what he estimated to be $8,400 worth of gold from the time of the theft to the time of trial. Considering the expenses petitioner claimed for the 3 years at issue with the $8,400 he accumulated in gold, the Court is skeptical that petitioner achieved a reasonable return. Petitioner believed that increasing his profitability was simply a matter of having more time to mine. Yet he did not increase his time in mining. This factor favors respondent.

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. Daley v. Commissioner, T.C. Memo. 1996-259; sec. 1.183-2(b)(3), Income Tax Regs. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit. Sec. 1.183-2(b)(3), Income Tax Regs.

Because petitioner had a full-time job during the years in question, his time spent on the gold mining activity was necessarily limited primarily to weekends and layoff periods. The record reflects that petitioner spent approximately 39 days during 1994 and 37 days during 1995 either working on the gold

mining activity or working at home on the equipment used in the activity. Although no calendar for 1996 was introduced, the Court infers a similar amount of activity for 1996 given the record as a whole. Moreover, the activity was conducted regularly throughout the years at issue, and occasionally petitioner took time off from his regular job to attend to his dredging equipment. The Court is satisfied that petitioner's activity was not primarily recreational. On this record, petitioner's expenditures of time and effort imply a profit objective. This factor weighs in petitioner's favor.

The term "profit" encompasses appreciation in the value of assets, such as land, used in an activity. Sec. 1.183-2(b)(4), Income Tax Regs. The equipment petitioner used in his gold mining activity could only depreciate. In the absence of any property with substantial appreciation potential, the Court does not consider this factor significant.

The fact that a taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. The record reflects only one other entrepreneurial activity by petitioner: a window cleaning business he operated in 1978 or 1979.

Petitioner started that business, as he put it, "just to put food in my gut" and kept a log book of accounts and appointments.

Petitioner's window cleaning business experience is not particularly useful in deciding whether the gold mining activity was engaged in for profit. The two activities were fundamentally different. No evidence was offered on the window cleaning business. At most, his experience in the other business should have instilled in petitioner the need for complete and accurate books and records, which petitioner did not carry over to his gold mining activity. This factor favors respondent.

A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue beyond a period that would customarily be necessary to bring the operation to profitable status, such continued losses, if not explainable as customary business risks or reverses, may be indicative that the activity is not engaged in for profit. A series of years in which net income was realized would indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.

The profit/loss history of petitioner's gold mining activity for the years at issue is summarized as follows:

| Year | Gold sales reported | Sch. C expenses reported | Net income/(loss) from gold mining |
|------|------|------|------|
| 1994 | $ 770 | ($18,934) | ($18,164) |
| 1995 | 1,540 | (23,953) | (54,413) |
| 1996 | 585 | (11,481) | (11,481) |

Petitioner also reported a net loss of $14,486 for 1997. Similarly, petitioner did not make a net profit from his gold mining activity in 1998, 1999, or 2000, although at trial he did not know the exact amounts of his losses for those years.

Thus, in 7 years of operations, which do not include his prospecting years prior to 1994, petitioner has established only a string of losses with no indication of realizing any profit. As this Court has stated:

> We recognize that gold mining is a risky business and also that if it is successful it will pay off well, and that some people are willing to take the risk for the anticipated reward. But where, as here, efforts had been made to mine this property for years, according to the evidence, without sufficient production to report any income from mining, it would be a pipe dream to expect to make a profit without some change in circumstances, and there is no evidence that changes were made that would materially increase production.

Cannon v. Commissioner, T.C. Memo. 1990-148, affd. 949 F.2d 345 (10th Cir. 1991). This factor favors respondent.

The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's objective.

An occasional small profit from the activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit.  However, substantial profit, though only occasional, would generally be indicative that an activity is engaged in for profit where the investment or losses are comparatively small.  Moreover, an opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated.  Sec. 1.183-2(b)(7), Income Tax Regs.

In none of the years that petitioner carried on the activity did he ever realize a net profit.  The record demonstrates an activity generating large losses without even an occasional profit.  Such evidence does not support the conclusion that the activity is engaged in for profit.

In addition, the record does not reveal a "an opportunity to earn a substantial ultimate profit in a highly speculative venture".  See id.  While gold mining is highly speculative, petitioner presented no evidence of being able to achieve a substantial ultimate profit.  He did not change his methodology or consult experts to improve his  profitability.  He believed it was simply a matter of having more time.  Yet he could not devote more time to the activity because of his other, gainful

employment, and he was not willing to give up his gainful employment to devote more time to gold mining. Petitioner, therefore, has not shown that a profit was attainable. Cf. Tinnell v. Commissioner, T.C. Memo. 2001-106 ("occasional profits" factor favored the taxpayer's position where objective facts supported his contention that a profit from a mining venture was attainable). This factor favors respondent.

The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved. Sec. 1.183-2(b)(8), Income Tax Regs.

Petitioner supported himself during the years at issue with wages earned in his primary job as a deck engineer and hydraulic equipment operator. His wage and unemployment income increased significantly during these years from $44,631 in 1994, to $75,160 in 1995, and $88,671 in 1996. At the same time, petitioner reported net losses of $18,164 in 1994, $54,413 in 1995, and $11,481 in 1996 from his gold mining activity. These losses, in effect, sheltered substantial amounts of petitioner's salary and wage income. This factor favors respondent.

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner's activity was risky, laborious, and time consuming. It involved back-breaking work, underwater diving for extended periods, travel, and hauling, operating, and maintaining heavy equipment. Although petitioner obviously derived some element of enjoyment from the activity, the small element of personal pleasure did not outweigh the work element. Enjoyment is not prohibited in an activity engaged in for profit, and "suffering has never been made a prerequisite to deductibility." Jackson v. Commissioner, 59 T.C. 312, 317 (1972). This factor favors petitioner.

On this record, the Court holds that petitioner did not engage in the activity of gold mining during 1994, 1995, and 1996 with the bona fide objective of making a profit within the intent and meaning of section 183. Accordingly, petitioner is entitled to deductions related to the activity only as provided in section 183(b). Respondent is sustained on the principal issue.

The second issue is whether petitioner is entitled to a deduction of any expenses incurred in connection with his gold mining activity. In the case of an activity not engaged in for profit, section 183(b)(1) allows a deduction for expenses that are otherwise deductible without regard to whether the activity

is engaged in for profit.  Section 183(b)(2) allows a deduction for expenses that would be deductible only if the activity were engaged in for profit, but only to the extent that the total gross income derived from the activity exceeds the deductions allowed by section 183(b)(1).

As noted earlier, petitioner reported gross sales of gold of $770, $1,540, and $585, respectively, for each of the years at issue.  Under section 183(b), petitioner is entitled to deduct expenses up to the amount of his gross sales, even though the activity was not engaged in for profit.  In the notice of deficiency, respondent disallowed all the expenses claimed on Schedule C of petitioner's return for each of the years in question for lack of substantiation.  Petitioner was not allowed deductions equal to the gross receipts he reported for each of the years in question.

Although, as noted earlier, petitioner's books and records did not satisfy the recordkeeping requirements of the Code, the Court is nevertheless satisfied, on this record, that petitioner incurred expenses equal to the gross sales he reported for the years in question.  On the basis of Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), petitioner is allowed deductions of $770, $1,540, and $585 with respect to his gold mining activity for 1994, 1995, and 1996, respectively.

The third issue is whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file a timely return for 1995.

Section 6651(a)(1) provides for an addition to tax if a tax return is not filed timely, unless the taxpayer establishes that the failure to file did not result from willful neglect and that the failure to file was due to reasonable cause. Willful neglect has been construed to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). Reasonable cause generally requires a taxpayer to demonstrate that he or she exercised ordinary business care or prudence. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner's 1995 tax return was signed on April 14, 1997, and received by respondent on April 17, 1997. That return was thus filed more than 1 year after its due date of April 15, 1996. Petitioner presented no evidence of reasonable cause or the lack of willful neglect for the late filing of his 1995 return. Respondent is sustained on this issue.

The final issue is whether petitioner is liable for accuracy-related penalties for the years 1994, 1995, and 1996.

Section 6662(a) provides for an accuracy-related penalty equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations. Sec.

6662(a) and (b)(1). Negligence consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and disregard consists of any careless, reckless, or intentional disregard. Sec. 6662(c). The courts have refined the Code definition of negligence as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989).

An exception to the section 6662 penalty applies when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances. See Stubblefield v. Commissioner, T.C. Memo. 1996-537 (citing Estate of Monroe v. Commissioner, 104 T.C. 352, 366 (1995)); sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Stubblefield v. Commissioner, supra (citing Beard v. Commissioner, T.C. Memo. 1995-41); sec. 1.6664-4(b)(1), Income Tax Regs.

Under section 1.6664-4(b)(1), Income Tax Regs., "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including

the experience, knowledge and education of the taxpayer."
Moreover, a taxpayer is generally charged with knowledge of the
law. <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 222 (1992).
Although a taxpayer is not subject to the addition to tax for
negligence where the taxpayer makes honest mistakes in complex
matters, the taxpayer must take reasonable steps to determine the
law and to comply with it. <u>Id.</u>

The Court holds that petitioner acted negligently with
respect to the underpayment in this case. "'Negligence' * * *
includes any failure by the taxpayer to keep adequate books and
records or to substantiate items properly." Sec. 1.6662-3(b),
Income Tax Regs. Petitioner failed to keep adequate books and
records. In light of his filing history and the conclusions with
respect to the gold mining activity, it is clear that petitioner
made no honest attempt to determine the correctness of his
deductions. Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case
Division.

<u>Decision will be entered</u>
<u>under Rule 155.</u>