T.C. Memo. 2007-164

UNITED STATES TAX COURT

WARREN R. FOLLUM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7936-03L.                    Filed June 25, 2007.

Warren Richard Follum, pro se.

<u>James R. Rich</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  Petitioner seeks review, pursuant to section 6320,[1] of respondent's determination to proceed with the collection of petitioner's income tax liabilities for the 1990,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1991, 1992, and 1993 taxable years.  The issues we must decide are whether petitioner's claim that notice and demand for payment was not sent to his last known address is barred by the doctrine of res judicata; whether the period of limitations on assessment of petitioner's 1990 and 1991 income taxes expired; whether petitioner engaged in tournament sport fishing with the intent to make a profit as defined by section 183; and whether the lien may remain in place.

## Background

The parties failed to submit a stipulation of facts but did stipulate the admission of certain exhibits.  At the time of filing the petition, petitioner resided in Raleigh, North Carolina.

During the years 1990 through 1993, Eastman Kodak Co. (Kodak) employed petitioner full time in Rochester, New York. As a full-time employee, petitioner worked at least 40 hours per week at Kodak.  At the same time, petitioner engaged in the private practice of architecture between October and May of each year.

On Schedules C, Profit or Loss From Business, of his 1990 through 1993 Federal income tax returns, petitioner indicated that he was engaged in the business of tournament sport fishing

and reported the following income and expenses relating to the tournament sport fishing activity:

| Description | 1990 | 1991 | 1992 | 1993 | Total |
|---|---|---|---|---|---|
| Gross receipts | -0- | -0- | $720 | $980 | $1,700 |
| Expenses: | | | | | |
| Car/truck | $1,859 | $2,247 | 2,384 | 1,649 | 8,139 |
| Depreciation | 4,163 | 19,083 | 10,259 | 5,646 | 39,151 |
| Insurance | 549 | 825 | 1,281 | 850 | 3,505 |
| Mtg. interest | 1,928 | 3,463 | 3,648 | 3,526 | 12,565 |
| Other interest | -0- | 831 | 1,144 | 497 | 2,472 |
| Supplies | 6,604 | 6,323 | 3,120 | 1,099 | 17,146 |
| Tax, license | 2,650 | 1,518 | 226 | 305 | 4,699 |
| Meals & entertainment | 187 | -0- | 216 | -0- | 403 |
| Office | 1,842 | -0- | -0- | -0- | 1,842 |
| Total expenses | 19,782 | 34,290 | 22,278 | 13,572 | 89,922 |
| Net loss claimed | 19,782 | 34,290 | 21,558 | 12,592 | 88,222 |

Petitioner generated income in 1992 and 1993 from the sale of fish.

Petitioner became interested in tournament sport fishing in the mid-1980's.  Before 1990, petitioner entered a couple of fishing tournaments in the Northeastern United States.

Petitioner fished in June, July, August, and September (the fishing season) of each of the years 1990 through 1993. Petitioner went fishing only on weekends and vacations. Petitioner did not travel south to fish during the 8 months of October through May because he did not want to take his boat, which weighed 20,000 pounds.

During 1990 through 1993, petitioner had people accompany him when he went fishing because it took two people to run the boat: One to steer and one to operate the fishing tackle. Petitioner did not pay the people who accompanied him on his fishing trips, but he agreed to pay them 10 percent of any profits.

Petitioner did not obtain corporate sponsors for his fishing activity. Petitioner did not speak at any seminars about fishing or write any articles about fishing.

Petitioner did not maintain a separate bank account for his fishing activity. Petitioner did not try to reduce his fishing activity expenses.

During the fishing season, petitioner spent 30 to 40 hours per week fishing, and, during the off-season, petitioner spent approximately 10 hours per week on fishing-related activities.

On July 13, 1992, respondent mailed to petitioner a letter informing petitioner that his 1991 income tax return had been selected for examination and setting an appointment for August 7, 1992. By letter dated July 15, 1992, respondent's agent rescheduled the appointment to September 11, 1992.

At the September 11, 1992, meeting between petitioner and respondent's agent, respondent's agent provided petitioner with a Form 4564, Information Document Request, on which respondent requested petitioner to provide by September 28, 1992, copies of

petitioner's 1989 and 1990 Federal income tax returns, and to "address Sec 183 factors in writing and return."  Respondent's agent's activity record reflects that on September 25, 1992, the agent "reviewed data received."  By letter dated September 28, 1992, respondent's agent forwarded to petitioner Form 5213, Election to Postpone Determination as to Whether the Presumption That an Activity Is Engaged in for Profit Applies, and requested petitioner to complete and return it.  By letter dated October 14, 1992, respondent's agent reminded petitioner to submit Form 5213.  On December 1, 1992, respondent received from petitioner Form 5213, which reflected that petitioner signed it on October 16, 1992.  As a result of respondent's receipt of Form 5213, respondent suspended the examination of petitioner's returns.

During February of 1994, respondent's agent Herrington contacted petitioner with regard to the examination of petitioner's 1992 return.  Later Agent Herrington expanded the examination to include the years 1991 and 1993.  On June 24, 1994, respondent mailed to petitioner a report disallowing petitioner's fishing activity losses for 1991, 1992, and 1993.  On July 19, 1994, Agent Herrington was informed that petitioner had filed Form 5213.  Therefore he suspended the examination of petitioner's returns and notified petitioner that the examination was suspended.

By letter dated August 29, 1995, respondent notified petitioner that his 1990 through 1993 income tax returns had been selected for examination.

On November 3, 1995, respondent mailed to petitioner at P.O. Box 3673, Wilmington, NC (Wilmington address), a notice of deficiency for 1990 and a second notice of deficiency for the years 1991 through 1993. On February 23, 1996, the notices of deficiency were returned to respondent with the notation "BOX CLOSED UNABLE TO FORWARD RETURN TO SENDER."

Petitioner did not file a timely petition with respect to the notices of deficiency, and, following petitioner's late filing of a petition with this Court with respect to the notices of deficiency, in Follum v. Commissioner, T.C. Memo. 1996-474, affd. 128 F.3d 118 (2d Cir. 1997), this Court determined that respondent had mailed the notices to petitioner's last known address, the Wilmington address, and dismissed petitioner's case for lack of jurisdiction. The Court of Appeals for the Second Circuit affirmed our decision.

On April 8, 1996, respondent assessed the amounts set forth in the notices of deficiency and mailed to petitioner at the Wilmington address notice and demand for payment of the amounts assessed. On April 12, 1996, respondent's notice and demand for payment was returned with the notation "Box Closed" and "Unable to Forward."

On June 17, 1996, respondent mailed to petitioner at the Rochester, New York, address that petitioner had used on his tax returns for the years 1990 through 1993 separate notices of intent to levy with respect to the liabilities assessed for 1990 through 1993. The Postal Service forwarded the notices to petitioner's then-current address in Lewiston, New York.

On December 29, 2000, respondent mailed to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing Under I.R.C. 6330 (levy notice) with respect to petitioner's income tax liabilities for 1990 through 1993.

On August 8, 2002, respondent filed a notice of federal tax lien for petitioner's assessed liabilities for the years 1990 through 1993.

On August 12, 2002, respondent mailed to petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320, for petitioner's assessed income tax liabilities for the years 1990 through 1993. On September 11, 2002, petitioner submitted to respondent a request for a hearing for the lien filing and the proposed levy action. On or about March 20, 2003, petitioner submitted to respondent's Appeals Office an amendment to his September 11, 2002, request for a hearing.

On April 24, 2003, respondent's Greensboro, North Carolina Appeals Office issued to petitioner a notice of determination

(notice of determination) for the lien filed August 12, 2002. The notice of determination stated that, because petitioner had a prior opportunity to dispute his underlying tax liabilities for the years 1990 through 1993, he was precluded from contesting those liabilities in the hearing for the lien filing. The Greensboro office also issued to petitioner a "DECISION LETTER CONCERNING EQUIVALENT HEARING UNDER SECTION 6320 and/or 6330 of the Internal Revenue Code" for the notice of levy dated December 29, 2000.

On May 27, 2003, petitioner filed the petition and attached to it the decision letter and the notice of determination.

On April 28, 2004, respondent filed a motion to dismiss for lack of jurisdiction on the ground that no notice of determination under section 6330 was sent to petitioner for the years 1990 through 1993. On January 13, 2005, this Court granted respondent's motion to dismiss on the ground that the levy notice sent to petitioner on December 29, 2000, was not sent to petitioner's last known address and was invalid and that no notice of determination was sent to petitioner for the levy notice dated December 29, 2000. On March 30, 2005, respondent filed a motion to remand this case to respondent's Appeals Office for consideration of the underlying tax liabilities and the issuance of a supplemental notice of determination addressing

those tax liabilities.  The Court granted respondent's motion to remand.

On August 10, 2005, respondent's Appeals Office issued to petitioner a "SUPPLEMENTAL NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330" in which respondent's Appeals officer sustained the determination made in the notices of deficiency issued to petitioner with respect to petitioner's income tax for the years 1990 through 1993.

In his request for an administrative hearing and the amendment thereto with respect to the filing of the lien, petitioner did not raise any collection alternatives.  Petitioner asserted that respondent did not mail notice and demand for payment to petitioner's last known address, that the Form 5213 which he filed was invalid because it was not submitted to respondent within 60 days of receipt by petitioner, and therefore that the period of limitations had expired for the years 1990 and 1991.

In the notice of determination, respondent's Appeals officer determined that notice and demand for payment had been mailed to petitioner's last known address because the notice had been mailed to the address on petitioner's most recently filed Federal income tax return.

Respondent's Appeals officer determined that petitioner submitted the Form 5213 to respondent more than 60 days following

the time respondent's agent provided it to petitioner, but that it was valid on the grounds that (1) once petitioner signed it and submitted it to respondent, the period of limitations was automatically extended, and that respondent had relied upon the validity of the form; and (2) the 60-day period within which to submit the Form 5213 never began to run because respondent had not provided petitioner with written notice that respondent intended to disallow petitioner's loss attributable to his fishing.

Petitioner brought suit in the U.S. District Court for the Western District of New York (New York case) seeking an injunction against collection of his 1990 through 1993 taxes and quiet title relief under 28 U.S.C. sec. 2410. Follum v. United States, 83 AFTR 2d 99-1622, 99-1 USTC par. 50,395 (W.D.N.Y. 1999), affd. without published opinion 199 F.3d 1322 (2d Cir. 1999). The District Court held that it lacked jurisdiction to consider petitioner's statute of limitations challenge to his tax liability because it was a challenge to the liability that would properly be raised in a deficiency or refund suit, not an allegation of procedural irregularities in the collection of taxes cognizable under 28 U.S.C. sec. 2410. The District Court also held that petitioner's request for an injunction was barred by section 7421(a), the Anti-Injunction Act. The District Court rejected petitioner's claim that assessment of his tax

liabilities was improper because the Government had not sent notice and demand for payment as required by section 6303, on the grounds that petitioner had raised the claim for the first time in his response to the Government's motion for summary judgment and that his contention was without merit.

Petitioner brought suit in the U.S. District Court for the Eastern District of North Carolina (the North Carolina case) under 28 U.S.C. sec. 2410 and asserted that the Government had not sent notice and demand for payment to his last known address. The United States moved to dismiss on the ground of res judicata. The District Court found that insofar as petitioner sought to assert a new basis for relief that was previously available to him in his prior law suits, the doctrine of res judicata was applicable, thus barring the action. Petitioner did not appeal. Follum v. United States, 89 AFTR 2d 2002-1625 (E.D.N.C. 2001).

## Discussion

Section 6320 provides that upon the filing of a notice of lien the Secretary shall notify the person in writing of the right to a hearing before the Appeals Office. The Appeals officer must verify at the hearing that the applicable laws and administrative procedures have been followed. Sec. 6330(c)(1). At the hearing, the person requesting the hearing may raise any relevant issues relating to the unpaid tax or the lien, including appropriate spousal defenses, challenges to the appropriateness

of collection actions, and collection alternatives.  Sec. 6330(c)(2)(A).  The person may challenge the existence or amount of the underlying tax, however, only if he or she did not receive any statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

Where the validity of the underlying tax liability is properly in issue, the Court will review the matter de novo. Where the validity of the underlying tax is not properly at issue, however, the Court will review the Commissioner's administrative determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Petitioner did not receive the notices of deficiency relating to his tax years 1990 through 1993 until after the expiration of the 90-day period to petition this Court although the notices were sent to his last known address.[2]  Follum v. Commissioner, T.C. Memo. 1996-474.  Respondent has not argued that petitioner had the opportunity to challenge the correctness of his tax liability by petitioning this Court from the notices of deficiency.  We conclude that petitioner's underlying tax liability for 1990 through 1993 is properly in issue.

---

[2]We note that the reason petitioner did not receive the notices of deficiency is that petitioner failed to inform respondent of a change in his address.

Petitioner argues that respondent failed to provide him with proper notice and demand for payment under section 6303. Respondent counters that petitioner had an opportunity to raise that argument in the New York case and is now barred from raising it by the doctrine of res judicata.

According to the judicial doctrine of res judicata:

when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." * * *

Commissioner v. Sunnen, 333 U.S. 591, 597 (1948) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877)); see Wooten v. Commissioner, T.C. Memo. 2003-113.

Neither party disputes that the parties herein and the parties in the New York case are the same.

Petitioner brought both cases for relief from liens arising from the same tax liability. In response to the Government's motion for summary judgment in the New York case, petitioner claimed that the Government had failed to give him timely notice and demand for payment.

In both the instant case and the New York case, petitioner has sought cessation of tax collection action with respect to his 1990 through 1993 income taxes on the ground that the Government did not comply with the requirements of section 6303. While

petitioner's present section 6320 suit is a separate and distinct suit from his previous suit under 28 U.S.C. sec. 2410, petitioner would rely on the same facts and evidence to establish that respondent failed to give him timely notice and demand in each suit.  See Sanders Confectionery Prods., Inc. v. Heller Fin. Inc., 973 F.2d 474, 484 (6th Cir. 1992).

The District Court for the Western District of New York took note of petitioner's notice and demand claim.  Primarily, the District Court decided that a quiet title action does not allow a taxpayer to collaterally attack the substantive validity of the underlying tax assessment that led to the lien.  Specifically, the District Court held that it lacked jurisdiction to consider petitioner's challenge to his tax liability based on the statute of limitations because it was a challenge to the underlying tax liability of a kind that generally may be raised in a Tax Court deficiency proceeding or a refund suit and was not an allegation of procedural irregularities in the collection of those taxes that was cognizable under 28 U.S.C. sec. 2410.  The District Court also rejected petitioner's claim that the tax assessments should be invalidated because the IRS had not properly sent notice and demand for payment as required by section 6303 to petitioner's last known address.  The District Court noted that because the claim was not raised in the amended complaint, it could not be considered, but it added:  "In any event,

plaintiff's claims that the tax assessments are invalid are without merit for the reasons stated by the United States in its reply brief." Follum v. United States, 83 AFTR 2d 99-1627 n.4, 99-1 USTC par. 50,395, at 87,966 n.4. The Court of Appeals for the Second Circuit affirmed the District Court's judgment. Follum v. United States, 199 F.3d 1322 (2d Cir. 1999).

The District Court in the New York case denied petitioner's section 6303 claim not on jurisdictional grounds but on the grounds that he had not timely raised the issue and that the allegations were without merit. If petitioner had raised the section 6303 claim timely, there would have been subject matter jurisdiction under 28 U.S.C. sec. 2410 over the claim because it was a challenge to the procedural validity of the collection action and not to the existence of the tax liability. See Hughes v. United States, 953 F.2d 531, 538 (9th Cir. 1992). In the District Court for the Eastern District of North Carolina, petitioner alleged again that the Government had not sent him the notice and demand for payment required by section 6303. See Follum v. United States, 89 AFTR 2d 2002-1625 (E.D.N.C. 2001), which was not appealed. The District Court dismissed the case, holding that petitioner was seeking the same relief as in the New York case, that the grounds on which he based his claim were "previously available" to him in that suit, and that consequently, his suit in the North Carolina case was barred by

res judicata. The District Court thus applied the doctrine of res judicata on the basis of the prior decision of the District Court in the New York case. Petitioner did not appeal the District Court's decision in the North Carolina case, which is now final. Petitioner cannot now challenge that decision or raise the section 6303 claim.

With respect to the expiration of the period of limitations, under section 183(e)(4), if a taxpayer elects to postpone the determination of whether an activity is engaged in for profit, and in particular whether the presumption of section 183(d) applies to the activity, the statutory period for making assessments with regard to that activity does not expire until 2 years after the due date for filing the return for the last year of the 5-taxable-year period to which the election applies. Petitioner elected to postpone the determination of whether his fishing was engaged in for profit beginning with the 1990 tax year. Therefore, the period of limitations for making an assessment with regard to that activity for 1990 and 1991 did not expire until April 15, 1997. The notices of deficiency were issued on November 3, 1995. Filing a Form 5213 is a means by which a taxpayer may elect to postpone the determination as to whether a certain activity is engaged in for profit, for purposes of applying section 183. Wadlow v. Commissioner, 112 T.C. 247, 250-251 (1999). The regulations provide that an individual

taxpayer may make the election provided in section 183(e) by submitting the required material within 3 years after the due date of the taxpayer's return, but not later than 60 days after the taxpayer receives written notice from a district director that the latter proposes to disallow deductions attributable to an activity not engaged in for profit under section 183.  Sec. 12.9(c)(1) and (2), Temporary Income Tax Regs., 39 Fed. Reg. 9948 (Mar. 15, 1974).

Petitioner claims that the tax assessments for the years 1990 and 1991 are barred by the 3-year statute of limitations under section 6501(a) and that the lien regarding those assessments is therefore invalid because the Form 5213 he submitted to respondent is invalid.  Petitioner contends that the form is invalid because he did not submit the Form 5213 to respondent within 60 days of being advised in writing that respondent proposed to disallow the subject deductions under section 183.  Petitioner claims that respondent's agent provided petitioner with a copy of the agent's work papers at a meeting on September 11, 1992, thereby providing written notice of the proposed disallowance.

We conclude that petitioner's argument has no merit. Respondent did not provide written notice to petitioner that respondent proposed to disallow deductions attributable to petitioner's fishing activity.  We find no evidence that

respondent's agent gave her work papers to petitioner on the day of the meeting. The copy of the work papers in the record includes an entry stating that petitioner had submitted a Form 5213, which neither party contends occurred on September 11, 1992. In the absence of the requisite written notice, the 60-day requirement is inapplicable. Petitioner therefore had until April 15, 1994, 3 years from the due date of his 1990 return, to submit a Form 5213. Petitioner's filing of Form 5213 on December 1, 1992, was timely in that it preceded the April 15, 1994, deadline.[3]

The parties disagree as to whether petitioner engaged in his fishing activity with an objective of making a profit within the meaning of section 183. Section 183(a) provides the general rule which disallows all deductions attributable to activities "not engaged in for profit". Section 183(b)(1), however, qualifies the general rule by allowing those deductions otherwise allowable regardless of profit objective, e.g., interest and State and local taxes. Further, section 183(b)(2) allows those deductions which would be allowable if the activity were engaged in for profit, but only to the extent that gross income attributable to

---

[3]We note that petitioner has only recently contested the validity of his Form 5213. At the time of filing the form, both parties treated it as valid and suspended examination of petitioner's returns. Petitioner appears to be attempting to whipsaw respondent by claiming the assessments were barred by the statute of limitations after enjoying the postponement of determination under sec. 183.

the activity exceeds the deductions permitted by section 183(b)(1). Section 183(c) defines an activity "not engaged in for profit" as any activity other than one for which deductions are "allowable * * * under section 162 or under paragraph (1) or (2) of section 212." Essentially the test for determining whether an activity is engaged in for profit is whether the taxpayer engages in the activity with the primary objective of making a profit. Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988). Although the expectation need not be reasonable, the expectation must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988). Furthermore, in resolving the question, greater weight is given to the objective facts than to the taxpayer's statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

In general, the Commissioner's determination in the notice of deficiency is presumed correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Under certain circumstances, the burden of proof shifts to the Commissioner. Sec. 7491(a)(1). Petitioner does not contend that section 7491 is applicable, nor did he establish that the burden of proof should shift to respondent. Accordingly, petitioner bears the burden of establishing that he engaged in his fishing activity for profit

during the taxable years in issue. See Rule 142(a); Welch v. Helvering, supra.

Section 1.183-2(b), Income Tax Regs., contains a nonexclusive list of factors to be used in determining whether an activity is engaged in for profit. The factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profit, if any; (8) the financial status of the taxpayer; and (9) any elements of personal pleasure or recreation. No single factor, nor simple numerical majority of factors, is controlling. See Cannon v. Commissioner, 949 F.2d 345, 350 (10th Cir. 1991), affg. T.C. Memo. 1990-148.

The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete books and records may indicate that the activity was engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Changes in operating methods, adoption of new techniques, or abandonment of unprofitable methods in a manner consistent with an intent to improve

profitability may also indicate a profit motive.  Id.  Petitioner testified that he conducted a profit and loss analysis relative to his fishing activity.  However, petitioner failed to produce the analysis at trial.  Petitioner did not produce any fishing activity records at trial and did not maintain a separate checking account for his fishing activity.  Additionally, there is no evidence of record to reflect that petitioner used records to evaluate or improve the financial aspects of his fishing activity.  The foregoing suggests that petitioner engaged in his fishing activity for recreational purposes.  See Peacock v. Commissioner, T.C. Memo. 2002-122.

A taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit motive.  Sec. 1.183-2(b)(2), Income Tax Regs.  Although petitioner testified that he consulted with fishing experts, there is no evidence in the record to indicate that petitioner ever researched the expense involved in attempting to win the prizes at fishing tournaments.  There is also no evidence of record to show that petitioner performed any meaningful study of the factors affecting the profitability of tournament fishing.  See Peacock v. Commissioner, supra; Hoy v. Commissioner, T.C. Memo. 1991-575.

Petitioner also argues that he had been fishing for over 30 years and "was considered a very good fisherman."  However, there

is no evidence that petitioner had any expertise in winning tournaments or translating tournament wins into a profitable activity. The expertise, research, and study factor favors respondent.

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner spent weekends and vacation time during the months of June through September fishing. The fact that the tournaments were conducted over the weekends suggests that those conducting the tournaments viewed the tournaments as primarily a weekend activity. Although petitioner spent a considerable amount of time fishing, the fact that petitioner limited his fishing primarily to weekends and that he fished only during a 4-month span suggests that he did not undertake the activity to make a profit. Additionally, the activity has substantial recreational aspects. The personal time and effort factor suggests that petitioner fished for recreational purposes and without the intent to make a profit.

An expectation that assets used in the activity may appreciate may be an indication of a profit objective. Engdahl v. Commissioner, 72 T.C. 659, 668 (1979); sec. 1.183-2(b)(4), Income Tax Regs. Petitioner claims his boat

appreciated. However, petitioner offered no evidence to support this claim. We conclude that petitioner's boat appreciation claim lacks credibility. The record does not establish that a fishing boat is the type of asset that is expected to appreciate over time. This factor favors respondent.

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner argues that his architectural business has earned a profit every year. However, there is nothing in the record to suggest that petitioner's architectural activities are related to petitioner's fishing activity. The similar profitable activities factor favors respondent.

A record of substantial losses over several years may indicate the absence of a profit motive. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). A series of losses during the initial or startup stage of an activity, however, may not necessarily be an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. Moreover, if losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, such

losses would not be an indication that the activity was not engaged in for profit. Id.

Although the presence of losses in the early years of an activity is not inconsistent with an intention to make a profit, the goal must be to realize a profit on the entire operation, a proposition that presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have been sustained in the intervening years. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Petitioner's losses for 1990 through 1993 exceed $88,000. The losses were not the result of unforeseen circumstances such as a natural disaster. There is no evidence that petitioner attempted to minimize these losses to break even, let alone recoup past losses. The record suggests that petitioner was indifferent to the losses. See Peacock v. Commissioner, supra. This factor weighs against petitioner.

The amount and frequency of occasional profits earned from the activity may also indicate a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioner never reported a profit from his fishing activity. The occasional revenues generated from the sale of fish during the years in issue were de minimis compared to the expenses and depreciation incurred. The occasional profits factor weighs against petitioner.

Petitioner contends that a small chance of making a large profit may indicate the requisite profit objective. Sec. 1.183-2(a), Income Tax Regs. Specifically, petitioner argues that the cash and prizes available per season totaled $1,250,000 and he believed he could earn a profit of $500,000[4] per season. Petitioner does not specify how many or which tournaments he believed he could win to generate this profit. Petitioner has not persuaded us that he had a chance either to make a profit or to recoup his losses. The chance to make a large profit factor weighs against petitioner.

Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Although petitioner was employed by Kodak during the years in issue, his income was not substantial. The income from other sources factor is neutral.

The presence of personal motives in the carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner argues that he suffers from severe motion sickness. Petitioner

---

[4]Petitioner states that this amount is in "today's dollars" but does not provide any details regarding his sources of data or present value computations.

says this, coupled with the frequently low air and water temperatures during tournaments, made every trip very uncomfortable. However, petitioner had been fishing for 30 years before entering tournaments. Presumably, petitioner enjoyed fishing enough to overcome his discomfort when he fished outside of tournaments. On the basis of the record as a whole, we conclude that petitioner entered fishing tournaments for recreation and did not engage in his fishing activity with the primary objective of making a profit.

Having reviewed the underlying liability de novo, we find no error. Additionally, we find no error or abuse of discretion by respondent in determining to uphold the filing of the lien against petitioner.

We have considered all of petitioner's contentions, and to the extent they are not addressed herein, they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.